FRANCISCO MARTINEZ-NAJARRO, APPELLANT, V.
IBP, INC., APPELLEE.
678 N.W.2d 114

Filed April 20, 2004.    No. A-03-552.

Todd Bennett, of Rehm & Bennett Law Firm, for appellant.

Bruce M. Smith for appellee.

IRWIN, Chief Judge, and SIEVERS and INBODY, Judges.

IRWIN, Chief Judge.

## I. INTRODUCTION

Francisco Martinez-Najarro (Martinez) appeals from an order of the Workers' Compensation Court review panel which affirmed an order of a trial judge of the Workers' Compensation Court. The trial judge awarded Martinez compensation for a 5-percent loss of earning power due to an injury Martinez sustained in a work-related accident in 1999. Martinez was restricted to lifting no more than 30 pounds after the accident in 1999, but prior to that accident, he had been restricted to lifting no more than 34 pounds due to a prior work-related accident in 1997. The trial judge considered Martinez' prior lifting restriction in determining Martinez' loss of earning power, and a three-judge review panel affirmed. Martinez now appeals to this court, and for the reasons stated below, we reverse, and remand for further proceedings.

## II. BACKGROUND

Martinez has been employed with IBP, inc., since 1996. In August 1999, Martinez developed a hernia while pushing boxes at IBP, which hernia resulted in Martinez' undergoing surgery. Martinez was also placed on a 30-pound lifting restriction as a result of his injury. This accident and the injuries suffered by Martinez are not disputed.

Prior to 1999, Martinez had been placed on a lifting restriction of no more than 34 pounds which was allegedly indefinite, though the record contains almost no information as to the injury which gave rise to this prior lifting restriction. Apparently, Martinez had injured his right shoulder in 1997. The record is also void of how or whether Martinez was compensated for this prior injury.

Martinez brought suit against IBP on February 22, 2000. At a hearing on October 29, 2001, the trial court heard testimony from Martinez and a representative of IBP. The court also received numerous exhibits. The court subsequently determined that

Martinez had sustained permanent partial disability, measured as a 5-percent loss of earning power, as a result of his accident and injury. In determining Martinez' loss of earning capacity, the court compared Martinez' prior 34-pound lifting restriction to his current 30-pound lifting restriction.

Martinez appealed the decision of the trial court, arguing that the court erred in, inter alia, apportioning Martinez' loss of earning power between his prior injury and his current injury. The three-judge review panel affirmed the decision of the trial court, and this appeal followed.

## III. ASSIGNMENTS OF ERROR

Martinez assigns as error, renumbered and restated, that the trial court erred in (1) apportioning Martinez' loss of earning power because of a prior scheduled member injury, (2) finding that Martinez suffered from a prior permanent restriction, (3) failing to accord the court-appointed vocational rehabilitation counselor's loss of earning power opinion a presumption of correctness, and (4) failing to provide a reasoned decision for its determination that Martinez' loss of earning power should be apportioned.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court did not support the order or award. *Morris v. Nebraska Health System*, 266 Neb. 285, 664 N.W.2d 436 (2003) (citing *Zavala v. ConAgra Beef Co.*, 265 Neb. 188, 655 N.W.2d 692 (2003); *Vega v. Iowa Beef Processors*, 264 Neb. 282, 646 N.W.2d 643 (2002)).

In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of the trial judge who conducted the original hearing. *Morris, supra* (citing

*Frauendorfer v. Lindsay Mfg. Co.*, 263 Neb. 237, 639 N.W.2d 125 (2002); *Vonderschmidt v. Sur-Gro*, 262 Neb. 551, 635 N.W.2d 405 (2001)). Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Morris, supra* (citing *Frauendorfer, supra*).

■ An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Morris, supra* (citing *Larsen v. D B Feedyards*, 264 Neb. 483, 648 N.W.2d 306 (2002); *Vega, supra*).

### 2. APPORTIONMENT OF BENEFITS

■ A determination as to an injured worker's loss of earning capacity is a question of fact to be determined by the Workers' Compensation Court. *Cummings v. Omaha Public Schools*, 6 Neb. App. 478, 574 N.W.2d 533 (1998) (citing *Cords v. City of Lincoln*, 249 Neb. 748, 545 N.W.2d 112 (1996)). If the record in a workers' compensation case presents conflicting medical reports and testimony, an appellate court will not substitute its judgment for that of the compensation court regarding which medical evidence to rely upon. *Cummings, supra* (citing *Kerkman v. Weidner Williams Roofing Co.*, 250 Neb. 70, 547 N.W.2d 152 (1996); *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996)). The compensation court is entitled to accept the opinion of one medical expert over that of another, and as the sole trier of fact, the compensation court is the sole judge of the credibility of the medical evidence and the weight to be given to it. *Cummings, supra* (citing *Kerkman, supra*).

In this case, the loss of earning capacity analysis submitted by Martinez states that his loss of earning capacity is anywhere between 31 and 52 percent, depending on whether he stays employed at IBP or goes elsewhere. This report acknowledges Martinez' prior injury and lifting restriction, but does not appear to take it into consideration in determining Martinez' loss of earning capacity.

The loss of earning capacity analysis submitted by IBP determines a much lower loss of earning capacity (a 1- to 5-percent loss). IBP's report took into account Martinez' prior injury and lifting restriction, which inclusion is the basis for the significant

difference between the two reports. IBP's report stated, "In order to accurately assess . . . Martinez' loss of earning capacity for his injury of April 21, 1999, one must first determine the effects of his pre-existing injury of 1997 on . . . Martinez' employment potential." The report also noted that after Martinez' injury in 1997, he returned to work and his wages were not affected by the injury, but "his access to the general labor market was diminished, and his opportunities to earn wages in the general labor market was also adversely [a]ffected." The report then calculated Martinez' loss of earning capacity on the basis of the 4-pound difference between the current lifting restriction and the pre-existing lifting restriction.

The trial judge awarded Martinez compensation based on a determination that Martinez sustained permanent partial disability measured as a 5-percent loss of earning power. The trial judge specifically stated, "Key to this determination is the recognition that before April 21, 1999, [Martinez] had a preexisting lifting restriction of 34 pounds as the result of a prior right shoulder injury." The judge further stated that "[a] significant portion of the 31 to 50 percent loss of earning capacity which [Martinez' report] identifies as being the result of the accident of April 21, 1999, was present because of the preexisting shoulder injury."

The court expressly adopted a doctor's report, stating in its order that "as a result of the neuropathic symptoms about the right groin, [Martinez] suffered a 2 percent impairment of the whole person." The court stated that the report is consistent with IBP's loss of earning capacity analysis that determined, after taking into account Martinez' preexisting lifting restriction, that Martinez had suffered a 1- to 5-percent loss of earning capacity.

On appeal, the review panel affirmed and issued an opinion stating that the essence of Martinez' argument was that the court should consider him "solely in the vacuum of the [1999] accident in contest" and that he "apparently wants history to be re-written so that he is presumed to have [had] no weight restrictions at the time of his [1999] accident." The review panel further stated that Martinez "wants to be assessed by some objective everyman standard unencumbered by the reality of his own make-up" and that "[t]o adopt [Martinez'] reasoning would be to wish away that which is fact."

The review panel then stated:

> Is the trial court to ignore other preexisting and limiting considerations; i.e. poor education; inability to speak English; etc.? Would the employer be free to take such a position if the court were to adopt [Martinez'] argument? Where does one draw the line? Are only those factors favorable to the plaintiff to be considered, and is the court to ignore those that lessen the plaintiff's loss? The better course, and the one universally accepted, is best personified in the old adage that "you take the plaintiff as you find him."

The review panel concluded that the court should "incorporate [into the determination of Martinez' loss of earning capacity] his physical capabilities existing <u>at the time of his accident</u>." (Emphasis in original.)

However, it is in fact the review panel that wants history to be rewritten and is wishing away that which is fact. Under Nebraska workers' compensation law, a plaintiff is not taken as he or she is found. Rather, an employer is liable to an employee for a work-related injury regardless of a preexisting condition so long as the employee proves by a preponderance of the evidence that the work-related injury was the proximate cause of his or her current injury. Furthermore, apportionment of an employee's benefits for a whole body injury is appropriate only when the employee has already been compensated for a prior whole body injury. In this case, no evidence existed that Martinez' prior 34-pound lifting restriction was from a previously compensated whole body injury, making appropriation inappropriate. In addition, it was error for the trial court to take into consideration Martinez' preexisting condition (being restricted from lifting more than 34 pounds) in determining his loss of earning capacity.

The review panel stated that Martinez did not cite any authority for his argument that his prior lifting restriction is not relevant to calculating his current loss of earning capacity. Notably, the review panel cites no authority to support its argument that Martinez' preexisting condition should be taken into consideration in determining Martinez' loss of earning capacity. Nebraska law is in fact contrary to the review panel's position.

In *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990), the Nebraska Supreme Court held that an

employee was entitled to compensation for a work-related injury, notwithstanding a preexisting condition. *Heiliger* involved an employee who suffered a back injury during the course of his employment. The employee had undergone back surgery a year before this accident for a prior injury. *Id.* The trial court recognized that the work injury " 'was probably an aggravation or re-injury of [the employee's prior injury].' " *Id.* at 465, 461 N.W.2d at 571. However, the court nonetheless determined that the employee was entitled to benefits. *Id.*

The employer in *Heiliger* appealed the trial court's award of benefits to the employee on several bases, one of which was that a doctor's evaluation of the employee's permanent partial disability, on which the court had relied in awarding the employee benefits, had attributed one-half of the employee's permanent partial disability to the work-related injury and one-half to the preexisting injury. The Nebraska Supreme Court upheld the trial court's award of benefits, stating that an employee is entitled to an award for a work-related injury "even though a pre-existing disability or condition has combined with the present work-related injury to produce the disability for which the claimant seeks an award." *Id.* at 467, 461 N.W.2d at 572 (citing *Cole v. Cushman Motor Works*, 159 Neb. 97, 65 N.W.2d 330 (1954); *Tucker v. Paxton & Gallagher Co.*, 153 Neb. 1, 43 N.W.2d 522 (1950)).

*Heiliger* did not address allocation to a prior injury with regard to calculating an injured employee's loss of earning capacity, but the court in *Heiliger* specifically held that because no claim was against the Second Injury Fund, allocation of disability attributable to a work-related injury and of disability attributable to an antecedent or preexisting disability or condition which may or may not have been work-related was irrelevant in that case. Furthermore, despite the doctor's evaluation attributing one-half of the employee's permanent partial disability to his prior injury, the court upheld the award of benefits for the full amount of the employee's permanent partial disability. *Id.*

Like the compensation court in *Heiliger* in stating the facts of that case, the compensation court in the case at bar stated in its order that "[a] significant portion of the 31 to 50 percent loss of earning capacity which [Martinez' report] identifies as being the

result of the accident of April 21, 1999, was present because of the preexisting shoulder injury." As noted above, the Nebraska Supreme Court specifically upheld the compensation court's award of benefits in *Heiliger* despite the fact that a portion of the employee's permanent partial disability was due to a prior injury. Under *Heiliger*, we find the compensation court's basis for determining Martinez' loss of earning capacity to have been in error.

In *Jacob v. Columbia Ins. Group*, 2 Neb. App. 473, 511 N.W.2d 211 (1994), this court held that benefits received for a work-related injury are not decreased by taking a preexisting physical disability into account. In *Jacob*, 2 Neb. App. at 475, 511 N.W.2d at 213, an employee lost a portion of his left hand in a work-related accident; the remaining portion of his hand was "of questionable utility." Prior to this accident, the employee in *Jacob* had lost his index finger and lacerated his middle finger and thumb on that hand, for which injuries he had received a lump-sum settlement. The trial court reduced his award for the subsequent injury to his hand because of the prior settlement he had received for the prior injury, stating that the employee had failed to prove that the value of both injuries together was greater than that of the second injury alone. *Id.*

In *Jacob*, 2 Neb. App. at 488, 511 N.W.2d at 219, this court reversed the trial court's apportionment, recognizing that " ' "[a]n employee is entitled to full compensation, notwithstanding the fact that his present disability is the result of an aggravated preexisting condition." ' " (Quoting *Benson v. Barnes & Barnes Trucking*, 217 Neb. 865, 354 N.W.2d 127 (1984).) *Jacob* was not a Second Injury Fund case, but we stated therein that the treatment of an existing disability under the Second Injury Fund was instructive on the treatment of an existing disability when the Second Injury Fund is not involved. We concluded that "benefits to an employee are not decreased because he or she had a preexisting condition that had been compensated for by the same or a different employer." *Id.* at 488, 511 N.W.2d at 220.

As IBP emphasizes in its brief, this court in *Jacob* did specify that the employee in that case did not continue to be disabled from the prior accident at the time of the subsequent accident—that after his prior injury, he returned to work and did the same job. We

stated that the usual apportionment statute " 'allows compensation for the disability that would have existed if the prior injury had not occurred, since the final effect of loss of the hand itself is the same whether several fingers were previously missing or not' "; but we then stated, " 'To be apportionable, then, an impairment must have been independently producing some degree of disability before the accident, and must be continuing to operate as a source of disability after the accident.' " *Id.* at 491, 511 N.W.2d at 221 (quoting 2 Arthur Larson, The Law of Workmen's Compensation § 59.22(c) (1993)). We stated that the employee's prior injury did not produce disability before the loss of his hand and was not a source of disability after either of the accidents. *Id.* We then concluded that the employee was entitled to compensation for the loss of his hand without any deduction for the prior injury to the fingers and thumb of his hand. *Id.*

IBP argues that Martinez' award should be apportioned under *Jacob* because Martinez' prior disability continued to operate as a source of disability. This argument is not persuasive. Martinez' injuries were to different parts of his body. According to *Jacob*, the usual apportionment statute would entitle Martinez to compensation for a disability that would have existed if the prior injury had not occurred. Even if Martinez had not had a prior 34-pound lifting restriction from his shoulder injury, his hernia still would have resulted in a 30-pound lifting restriction. The two injuries were not related, so the second injury would not have been less had the first injury not occurred. Furthermore, there is no evidence that Martinez was compensated for the injury which gave rise to his prior 34-pound lifting restriction.

In *Cummings v. Omaha Public Schools*, 6 Neb. App. 478, 574 N.W.2d 533 (1998), this court held that apportionment was appropriate. In *Cummings*, an employee sustained a work-related injury that exacerbated a prior compensated work-related injury. The compensation court apportioned the employee's benefits between the prior and subsequent injuries, and a three-judge review panel affirmed. *Id.*

In *Cummings*, this court held that *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990), and *Jacob v. Columbia Ins. Group*, 2 Neb. App. 473, 511 N.W.2d 211 (1994), did not prohibit apportioning a claimant's recovery

for disability between a prior compensated injury to the body as a whole and a subsequent compensable injury to the body as a whole. We recognized the rule stated in *Jacob* that " ' "[t]o be apportionable . . . an impairment must have been independently producing some degree of disability before the accident, and must be continuing to operate as a source of disability after the accident." ' " *Cummings*, 6 Neb. App. at 485-86, 574 N.W.2d at 539. However, we then stated, "In terms of this test for determining when apportionment is appropriate, the term 'disability' contemplates impairment of earning capacity, not functional disability," *id.* at 486, 574 N.W.2d at 539, and that "the problem of apportionment may be encountered between an employer and an employee when disability from a prior injury contributes to a claimant's total disability following a subsequent injury," *id.* at 486, 574 N.W.2d at 539-40.

We distinguished *Jacob* in *Cummings*, 6 Neb. App. at 486, 539 N.W.2d at 540, stating:

Because both injuries [in *Jacob*] were injuries to members, rather than injuries to the body as a whole, the claimant [in *Jacob*] did not suffer any disability in terms of loss of earning capacity, as distinguished from functional disability, from the prior injury, and the award which he received for the prior injury did not need to be deducted from the disability benefits [to] which he was entitled as a result of the subsequent injury.

We also stated that "[t]he overriding factor in *Jacob* was that the prior injury did not result in any loss of earning capacity, and apportionment was therefore inappropriate." *Cummings*, 6 Neb. App. at 488, 574 N.W.2d at 541. In *Cummings*, 6 Neb. App. at 486, 574 N.W.2d at 540, we recognized that the employee's "prior back injury independently produced some degree of lost earning capacity, as indicated by his prior award of benefits for a 25-percent loss of earning capacity resulting from the prior accident," and that "the prior disability [continued] to act as a source of lost earning capacity even after the subsequent series of accidents." On this basis, we held that the employee in *Cummings* was "not entitled to be compensated again for the original 25-percent disability caused by the prior injury." 6 Neb. App. at 486, 574 N.W.2d at 540.

In the case at bar, Martinez suffered the consequence of having already been compensated for a loss of earning capacity—which compensation could have been used as a basis for apportioning Martinez' benefits—without any evidence reflecting that Martinez had actually been previously compensated. The compensation court imposed this consequence by taking into account Martinez' prior lifting restriction to reduce his current loss of earning capacity despite the fact that no evidence supports a finding that Martinez' prior injury was in fact a previously compensated one that caused permanent partial disability and a loss of earning capacity. In fact, it is quite likely that Martinez was not compensated for a prior loss of earning capacity, because Martinez' prior injury, to his shoulder, would be a scheduled member injury under Nebraska's workers' compensation statutes. Any loss of earning capacity sustained from a permanent partial disability is irrelevant for the purpose of compensating scheduled member injuries. See *Rodriguez v. Monfort, Inc.*, 262 Neb. 800, 635 N.W.2d 439 (2001) (holding that because claimant's injuries were scheduled member injuries, and not injury to his body as a whole, any loss of earning capacity claimant may have sustained was irrelevant).

The compensation court apportioned Martinez' loss of earning capacity based solely on his lifting restrictions. The compensation court's and the review panel's reasoning was that because of Martinez' preexisting lifting restriction, he is not entitled to be fully compensated for his current injury—that he should not be allowed to pretend that the prior injury did not occur. This is clearly against Nebraska case law. The law is that a preexisting injury is not relevant to a compensable work-related injury and that apportionment occurs on a current award when a prior loss of earning capacity already existed. The compensation court circumvented those rules by taking into account Martinez' preexisting injury in the calculation of his current loss of earning capacity (the court based its determination on the difference between his prior lifting restriction and the new, lower lifting restriction).

Furthermore, apportionment is not properly done when determining an employee's loss of earning capacity. Apportionment occurs after the loss of earning capacity for the current injury has

been determined; the amount of loss of earning capacity for which the claimant has already been compensated is deducted from the subsequent loss of earning capacity.

The compensation court's determination that Martinez suffered a 5-percent loss of earning capacity was clearly wrong because it was based upon an analysis which took into account Martinez' preexisting condition. A preexisting condition cannot be considered in the determination of a claimant's loss of earning capacity. In addition, there is absolutely no evidence on the record that Martinez was previously compensated for a prior loss of earning capacity.

Finally, we note that Nebraska's workers' compensation statutes do not prohibit a claimant from concurrently receiving statutory benefits for separate injuries arising out of separate accidents, so long as the combined payments do not exceed the maximum weekly rate allowed by statute. See *Vega v. Iowa Beef Processors*, 264 Neb. 282, 646 N.W.2d 643 (2002) (holding that workers' compensation statutes do not prohibit claimant from receiving permanent partial disability benefits from prior accident concurrently with temporary total disability benefits from subsequent injury). This would entitle Martinez to be compensated for both his prior injury to the shoulder and his subsequent hernia and resulting surgery if the resulting benefits were concurrent. If Martinez could be compensated for both injuries at the same time had the benefits for both been concurrent, there is no justification for reducing his compensation on his current injury because of the resulting restrictions from the prior injury.

## V. CONCLUSION

For all of the above-stated reasons, we find that because the compensation court's determination of Martinez' loss of earning capacity was expressly based upon a reduction for Martinez' prior lifting restriction, that determination was clearly wrong. An employee is entitled to compensation for a work-related injury regardless of a preexisting condition. Furthermore, apportionment would be appropriate only had Martinez' prior injury been a whole body injury and had it been compensated as such. IBP's sole basis for apportionment was that Martinez had a prior lifting restriction—not that Martinez' prior injury had resulted in a

permanent partial disability involving loss of earning capacity and that he had already been compensated for that loss of earning capacity. Accordingly, we hold that the trial court erred in its determination of Martinez' loss of earning capacity and that the review panel erred in affirming the trial court's determination.

We remand this case for further proceedings, on the record as it presently exists, in accordance with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.