JERRY P. LADD, APPELLEE, V. COMPLETE CONCRETE, INC., AND FEDERATED MUTUAL INSURANCE CO., APPELLANTS.

690 N.W.2d 416

Filed December 14, 2004.    No. A-04-515.

Todd R. McWha and S. David Schreiber, of Waite, McWha & Harvat, for appellants.

Tony Brock, of Shasteen, Linscott & Brock, P.C., for appellee.

SIEVERS, MOORE, and CASSEL, Judges.

CASSEL, Judge.

## INTRODUCTION

Complete Concrete, Inc., and Federated Mutual Insurance Co. (collectively Complete Concrete) appeal the decision of the review panel of the Nebraska Workers' Compensation Court which affirmed the trial court's compensation award to Jerry P. Ladd and ordered Complete Concrete to pay an attorney fee with interest. The court-appointed vocational rehabilitation counselor first opined that Ladd's loss of earning capacity was 60 percent, later opined that the loss was 100 percent, and finally opined that Ladd had sustained a 70-percent loss of earning capacity. The trial court found that a particular doctor's report discussed by the

counselor did not form a basis for the counselor to revise her opinion and that Ladd's loss of earning capacity was 100 percent. For the reasons set forth herein, we affirm.

## BACKGROUND

Because the issues presented by this appeal are rather narrow, we shall limit our summarization of the evidence to that which is pertinent to our resolution of the matter. The parties stipulated that on July 27, 2001, Ladd sustained an injury arising out of and in the course of his employment with Complete Concrete, Inc., and that he reached maximum medical improvement on January 4, 2003. Ladd testified that he sustained a number of injuries as a result of the accident, including a broken vertebra, a shoulder and neck injury, a fractured skull, bleeding in the front and back of his head, nerve damage in the face, optical nerve damage in his left eye, a cracked tube in his ear, and loss of hearing. He testified that the biggest physical problems were his hearing and his back and that he also has "problems with the attention span and cognitive things."

Dr. Britt Thedinger, an ear specialist, wrote in a letter dated February 20, 2003, that Ladd had permanent work restrictions, that Ladd should not work above ground level or around any type of machinery which would place Ladd or others in danger if Ladd were to lose his equilibrium, and that Ladd had a complete hearing loss in his left ear, which was a 100-percent impairment.

Roseanne Olsen, the vocational rehabilitation counselor appointed by the court, met with Ladd on March 18, 2003, and prepared a report dated March 24, 2003. Olsen reviewed a number of medical records and documents which she set forth in her report, but it does not appear that Thedinger's letter of February 20 was among those documents. Olsen noted in her report that Dr. Thomas Franco, medical director of a rehabilitation center, had released Ladd to work with the following restrictions: (1) light duty physical demand tasks, (2) limit right upper extremity lifting with hand to remain below shoulder level, (3) lifting a maximum of 30 pounds from 12 inches to chest height, (4) unlimited lifting of 20 pounds below shoulder level, and (5) ability to change position from sitting to standing every 30 minutes as comfort dictates. Olsen stated that she would complete the loss of earning capacity

report after she received Franco's recommendations regarding the vocational implication of Ladd's brain injury.

Olsen prepared a supplemental report on April 30, 2003 (April report), wherein she stated that she relied upon the opinions of Franco and concluded with a reasonable degree of vocational certainty that Ladd's loss of earning capacity was approximately 60 percent.

At the request of Ladd's counsel, Patricia Conway, a rehabilitation specialist, prepared a rebuttal loss of earning capacity analysis dated May 30, 2003. Conway opined that Ladd sustained a loss of earning capacity of 80 percent. Conway noted that Olsen, in her April report, had not given consideration to Ladd's reaching limitations—unable to perform work above shoulder level or more than 18 inches from his body. Conway was of the opinion that Olsen also had not given consideration to Ladd's hearing loss when determining Ladd's loss of access to the labor market. Conway further believed that Olsen outlined jobs for Ladd that would be inappropriate and that the 60-percent loss of earning capacity opined by Olsen was too low.

Olsen prepared a supplemental loss of earning capacity analysis on May 30, 2003 (May report), to address medical information from Thedinger, and she specifically mentioned a letter from Thedinger dated May 8, 2003. Thedinger stated in the May 8 letter that the traumatic injury to the skull and brain initiated a process called Meniere's disease, that the disease was a direct result of the accident, and that the disease involved both ears. Thedinger stated that Ladd had 100-percent impairment in his left ear and approximately 71-percent impairment in his right ear. Thedinger attributed 90 percent of the hearing loss to the accident. In formulating Ladd's loss of earning capacity, Olsen stated that she relied upon the additional opinions provided by Thedinger and that she combined those opinions with the previous medical opinions referenced in her April report. In Olsen's May report, she stated with a reasonable degree of vocational certainty that Ladd's loss of earning capacity was 100 percent.

Thedinger prepared a letter dated June 3, 2003, addressed to counsel for Complete Concrete. No objections were made to receipt into evidence of this letter, exhibit 34, at the hearing. The letter stated that Ladd was deaf in one ear, that he had a rather

significant hearing loss in the other ear, and that even with the best hearing aid technology, Ladd would have limited ability to hear. Thedinger's letter further stated:

> Regarding employment opportunities . . . Ladd will have improved hearing with a hearing aid in one ear in a situation where there is limited background noise. I suspect that he could perform certain activities in areas in which there is limited noise and little need for communication. Thus, he could perhaps perform a job easily as an inventory employee.

In a letter dated July 24, 2003 (July letter), Olsen set forth her responses to questions posed by counsel for Complete Concrete. She presented a number of jobs that Ladd might be able to perform based upon the June 3 letter from Thedinger. Olsen stated therein that it was her professional opinion, "based upon all of the information that has been relevant in connection with this case," that Ladd's loss of earning capacity was 70 percent.

The trial court entered an award for Ladd on November 14, 2003. The court found that as a result of the accident, Ladd had a 71.2-percent loss of hearing in his right ear, a complete loss of hearing in his left ear, a 16-percent permanent partial impairment of his right arm, and a 20-percent impairment of his visual system. The trial court also found that Thedinger's June 3 letter "does not form a basis for . . . Olsen to revise her opinion with respect to [Ladd's] loss of earning capacity." The court stated that "the impact of a hearing loss on an employee's earning power should be measured by his uncorrected loss of hearing without consideration of any restoration that may be afforded by hearing aids." Further, the trial court stated that Thedinger's remarks " 'I suspect' " and " 'could perhaps' perform a job" were "not the expression[s] of an opinion to a reasonable degree of medical probability." The trial court further stated Olsen did not include the restrictions expressed by Thedinger on February 20 that Ladd should not work above ground level or around any type of machinery which would place him or others in danger if he were to lose his equilibrium and that Ladd would not be able to perform the duties of an inventory employee if the inventory employee would need to use a ladder or otherwise rise above floor level to determine the amount of inventory.

Complete Concrete sought further review, and on April 8, 2004, the review panel filed an order of affirmance on review. Since Complete Concrete had appealed, the review panel found that Complete Concrete should pay Ladd an attorney fee of $2,500, together with interest. Complete Concrete timely filed an appeal to this court.

## ASSIGNMENTS OF ERROR

Complete Concrete alleges the review panel erred in affirming the trial court's rulings that (1) the loss of earning capacity was 100 percent, (2) Ladd was permanently and totally disabled as a result of his accident, and (3) exhibit 34 did not form a basis for Olsen to revise her opinion with respect to Ladd's loss of earning capacity.

## STANDARD OF REVIEW

An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court did not support the order or award. *Ludwick v. Triwest Healthcare Alliance*, 267 Neb. 887, 678 N.W.2d 517 (2004).

Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id.* An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Id.*

When testing the sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence. *Swanson v. Park Place Automotive*, 267 Neb. 133, 672 N.W.2d 405 (2003).

A trial court's ruling accepting or rejecting evidence will not be disturbed unless there is shown to be a clear abuse of discretion. *Frank v. A & L Insulation*, 256 Neb. 898, 594 N.W.2d 586 (1999).

## ANALYSIS

A determination as to an injured worker's loss of earning capacity is a question of fact to be determined by the Workers' Compensation Court. *Martinez-Najarro v. IBP, inc.*, 12 Neb. App. 504, 678 N.W.2d 114 (2004). The only opinion regarding loss of earning power entitled to a rebuttable presumption of correctness is that of a vocational rehabilitation counselor chosen or selected by the statutorily set forth procedures. Neb. Rev. Stat. § 48-162.01(3) (Cum. Supp. 2002). Thus, any opinion expressed by Olsen, the court-appointed vocational rehabilitation counselor in this case, as the result of a loss of earning power evaluation would be entitled to the presumption of correctness. Because Olsen submitted three different opinions as to Ladd's loss of earning capacity, we must determine to which opinion the statutory presumption applies. The trial court did not make a finding with regard to the statutory presumption, but instead found that Thedinger's letter of June 3, 2003, did not provide a basis for the counselor to revise her opinion, and the court therefore implicitly determined that Olsen's May report was entitled to the presumption.

Two Nebraska cases involving multiple loss of earning reports by the same counselor that we found helpful to our analysis are *Variano v. Dial Corp.*, 256 Neb. 318, 589 N.W.2d 845 (1999), and *Noordam v. Vickers, Inc.*, 11 Neb. App. 739, 659 N.W.2d 856 (2003).

In *Variano, supra,* the court-appointed vocational counselor submitted a report in September 1996 stating that the employee had sustained a loss of earning power of 25 to 30 percent and submitted a letter in March 1997 stating that the employee was totally disabled as a result of the injury and would not benefit from vocational rehabilitation services. The trial judge, relying on the September report, found that the employee sustained a 30-percent loss of earning capacity, and the review panel affirmed. Upon appeal, the Nebraska Supreme Court determined that the counselor's first opinion expressed in September was rendered prior to the completion of the counselor's evaluation and thus could not rebut the counselor's final opinion. The Supreme Court therefore held that the trial court was required to

afford the opinion expressed in the March letter the rebuttable presumption of correctness.

In *Noordam, supra*, the vocational rehabilitation counselor issued two different opinions, apparently due to uncertainty regarding whether the employee was able to work only under the restrictions imposed by a doctor or whether the employee was no longer disabled because the functional capacity evaluation provided proof that the doctor's restrictions were no longer necessary. This court determined that in *Noordam*, the counselor's findings in her reports were independent of each other and based on a different set of facts in one situation versus the other. We stated that when a vocational rehabilitation counselor submits multiple reports that are determined to be written not because a process of recovery was incomplete from the time a prior report was written, but, rather, because a counselor gives differing opinions each based on a different factual scenario, it is up to the trial court to make factual findings to determine which report should be given the rebuttable presumption of correctness.

Like the situation in *Noordam* but contrary to the situation in *Variano*, there is no indication in the instant case that Olsen's May report was incomplete or that she intended to continue evaluating Ladd's progress. Rather, Olsen's July letter was drafted in order to address questions from Complete Concrete's legal counsel. We conclude that the situation at hand is more analogous to the one in *Noordam* and that the trial court was therefore entitled to make factual findings to determine which report is permitted the rebuttable presumption of correctness. Apparently, the court found the rebuttable presumption of correctness should be applied to Olsen's May report, and we cannot say that such finding was clearly erroneous.

If the record in a workers' compensation case presents conflicting medical reports and testimony, an appellate court will not substitute its judgment for that of the compensation court regarding which medical evidence to rely upon. *Martinez-Najarro v. IBP, inc.*, 12 Neb. App. 504, 678 N.W.2d 114 (2004). In rejecting Olsen's July letter, the trial court found that exhibit 34 did not form a basis for Olsen to revise her opinion on Ladd's loss of earning capacity. Exhibit 34 is the June 3, 2003, letter from

Thedinger, the ear specialist, to counsel for Complete Concrete, which letter was received into evidence at the hearing without objection. The letter stated that Ladd was deaf in one ear and had significant hearing loss in the other and that he would have limited ability to hear with even the best hearing aid technology. Thedinger's letter further stated: "I suspect that [Ladd] could perform certain activities in areas in which there is limited noise and little need for communication. Thus, he could perhaps perform a job easily as an inventory employee." However, the Nebraska Supreme Court has stated that disability benefits are awarded based upon the uncorrected or unaided impairment. See *Kalhorn v. City of Bellevue*, 227 Neb. 880, 420 N.W.2d 713 (1988). Further, expert medical testimony based on "could," "may," or "possibly" lacks the definiteness required to support an award from the Workers' Compensation Court. *Edmonds v. IBP, inc.*, 239 Neb. 899, 479 N.W.2d 754 (1992).

In concluding that Ladd was permanently and totally disabled, the trial court noted that Ladd had a 71.2-percent loss of hearing in his right ear, a complete loss of hearing in his left ear, a 20-percent impairment to his visual system, a 16-percent permanent partial impairment of his right arm, restrictions on prolonged reading, restrictions regarding vestibular dysfunction, and restrictions relating to injuries to his shoulder and lower back. The findings by the trial court are supported by the record, and we therefore cannot say that the trial court was clearly wrong in finding Ladd to be permanently and totally disabled.

## CONCLUSION

We cannot conclude that the trial court was clearly wrong in applying the rebuttable presumption of correctness to Olsen's May report and in determining that exhibit 34 did not form a basis for Olsen to revise her opinion rendered in May. We therefore affirm.

AFFIRMED.