IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

DUPELL V. FORD STORAGE & MOVING

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MICHAEL DUPELL, APPELLEE,

V.

FORD STORAGE & MOVING AND VANLINER INSURANCE COMPANY, APPELLANTS.

Filed October 3, 2017.　No. A-16-1163.

Appeal from the Workers' Compensation Court: JULIE A. MARTIN, Judge. Affirmed.

Brian D. Moore, of Larson, Kuper, Wenninghoff & Carney, P.C., L.L.O., for appellants.

Terry M. Anderson and Michael W. Khalili, of Hauptman, O'Brien, Wolf & Lathrop, P.C., for appellee.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

MOORE, Chief Judge.

INTRODUCTION

Ford Storage & Moving (Food Storage) and Vanliner Insurance Company (collectively the Appellants) appeal from the Nebraska Workers' Compensation Court's award of benefits to Michael Dupell. Because we find the evidence sufficient to support the award, we affirm.

FACTUAL BACKGROUND

The present appeal primarily concerns the nature and extent of the injury sustained by Dupell as a result of his accident at Ford Storage in November 2014 where Dupell was employed. Dupell was 53 years old at the time of trial. Although some evidence suggests he had a degree in micro accounting, he testified that he only completed 2½ years of college between 1989 and 1991 and did not earn a degree. He briefly did some accounting work in 1997 and had some managerial experience in the 1990s.

- 1 -

Dupell has been employed at Ford Storage since September 1999. His initial duties at Ford Storage primarily included assembling and delivering furniture. Immediately prior to the November 2014 injury at issue in this case, Dupell's duties included "[l]oading, unloading trucks sometimes by hand, forklift, deliveries, driving a truck, making deliveries, [and] whatever [Ford Storage] needed [him] to do around the warehouse." A company representative described Dupell's position prior to the accident as the "odd-job guy" that "helped us with different aspects." Dupell had been in that position for approximately 1½ to 2 years.

Dupell has had a number of prior work-related injuries, some with Ford Storage and some with other employers. As relevant to the present appeal, in January 2007, Dupell was involved in a motor vehicle accident while driving a Ford Storage truck. According to Dupell, he sustained injuries to his neck and back in that accident, although the injury was primarily to his neck. Dupell eventually accepted a lump sum payment in connection with that accident. Dupell testified at trial in the present case to his understanding that the lump sum payment had been to compensate him for the 5-percent impairment rating his doctor had assigned. In his testimony, Dupell could not recall if the lump sum payment was for the cervical injury. Exhibit 16, which included documents relating to the lump sum payment for the 2007 injury, showed that the impairment rating was for the cervical injury and not a back injury. However, the court ultimately chose not to admit this exhibit into evidence.

The present accident occurred on November 3, 2014, while Dupell was making a delivery to a local warehouse for Ford Storage. Dupell injured his lower back while "pull[ing]" a pallet that weighed approximately 1,000 pounds into his truck. Dupell finished his shift and sought medical treatment the following morning. Dupell underwent a conservative course of treatment, including medications, physical therapy, and injections.

On March 20, 2015, Dupell underwent a functional capacity evaluation (FCE), but accurate "functional restrictions" could not be outlined for Dupell due to "his invalid test results." During the FCE, Dupell "demonstrated numerous findings of inconsistent and submaximal effort." The physical therapist who conducted the FCE observed that Dupell's "subjective complaints of pain and pain behaviors appear[ed] out of proportion with his objective findings of dysfunction." The physical therapist also noted that Dupell "appear[ed] safe to function at higher levels than he demonstrated during this exam."

Conservative treatment did not relieve Dupell's pain, and he was taken off work in late August or early September 2015 following an "incident involving a loss of continence" and was told by his family doctor to see Dr. Stephen Doran, the neurosurgeon who had treated him previously in connection with the November 2014 accident. On October 8, following "an updated lumbar MRI," Doran compared that MRI to one done on November 12, 2014. Although the radiologist thought the scans were unchanged, Doran felt that there had been "a slight but definitive progression in [Dupell's] disc bulge at L4-5 on the right side." Doran noted that he did not think that there was "significant nerve root compression of the L5 nerve root" shown in the 2014 MRI, but that the disc bulge had since "worsened slightly" so that the updated MRI showed that "now there is demonstrable compression of the L5 nerve root that would correlate with [Dupell's] leg pain." As Dupell had "failed an exhaustive course of conservative care," Doran recommended a

"right L4-5 microendoscopic discectomy," which Doran felt "would have a reasonable probability of relieving [Dupell's] leg pain with unpredictable effect on his back pain."

Dr. Benjamin Bixenmann conducted an independent medical examination of Dupell on November 24, 2015. Bixenmann was provided with "several documents from consulting specialists" Dupell had seen previously and after the exam was provided with MRIs of Dupell's lumbar spine taken in November 2014 and September 2015. Based on his examination of Dupell and the materials provided, Bixenmann opined that Dupell had reached MMI "given his current treatment for his diagnosis of lumbar intervertebral disc herniation with radiculopathy sustained during a work injury on 11/3/14" and calculated a total whole person impairment of 9 percent. He also thought that "surgical decompression of the right L5 nerve via a microdiscectomy procedure at the L4-5 level would improve [Dupell's] current pain condition." Bixenmann also recommended a return to work with a 20-pound lifting restriction and "limited bending and twisting at the waist given his current condition."

On January 29, 2016, Doran performed the recommended surgery. Following surgery, Dupell participated in physical therapy, which he testified did not help with his pain. On March 31, the therapist noted that Dupell's progress was "[f]air to poor" because Dupell was "still so limited by pain and guarding that he has difficulty [with] bending [and] lifting." After his last physical therapy appointment on April 12, Dupell transitioned to a "work hardening" or "work conditioning" program. Dupell was last seen by Doran on April 27. At that time, Doran stated that Dupell's residual back pain following surgery continued to improve, although he still had pain with bending. Dupell was "progressing" and had about 3 weeks left of the work conditioning program. Doran stated further that once Dupell completed his work conditioning, he would be able to return to work "full time without restrictions" on about May 23.

Dupell returned to work for Ford Storage on May 23, 2016 as a forklift driver. A Ford Storage representative testified that Dupell's pre-injury job (the local delivery position) no longer existed at the time of his release to work. The job duties of the forklift driver position are similar to Dupell's previous job duties without "the delivery aspect." Dupell testified that he is able to do his current job, that no accommodations are being made for him, but that he still has pain in his back. At the time of trial, he was working full-time without restrictions, albeit "[w]ith pain." Although overtime hours were available to Dupell at the time of trial, he testified that he rarely accepts them because of his continued pain.

In a letter dated August 8, 2016, Doran stated that while Dupell had residual back and buttock pain, he was placed at maximum medical improvement (MMI) on June 29. Doran noted that Dupell was "capable of working his normal job" and that "no follow-up was scheduled." Doran stated that "using the AMA Guide to the Evaluation of Permanent Impairment," Dupell "qualified for a DRE Lumbar Category 3 with a history of herniated disc treated surgically," which "qualifies him for a 13% impairment of the whole person."

Dupell made phone calls to Doran's office after returning to work, but had been "playing phone tag with the nurse" and had not obtained another appointment for his continued back pain. However, on August 15, 2016, Doran ordered an FCE for Dupell's diagnosis of "[o]ther intervertebral disc displacement, lumbar region." The FCE, completed on August 25, had a 76 percent validity measure and indicated that Dupell could work at the sedentary to light duty

physical demand level for an 8-hour work day. Restrictions on constant standing and walking prevented Dupell from being placed in the light to medium physical demand category. In a September 15 letter to Dupell's attorney, Doran indicated that he had reviewed the FCE, agreed with the report, and placed Dupell "at a sedentary to light duty permanent restriction 8 hour work day."

Dupell was asked at trial whether he was currently following the restrictions of the August 2016 FCE at work. He indicated that he was not. Dupell testified that in each 2-week period he was currently working three 12-hour shifts the first week followed by four 12-hour shifts the next week and that he was "[r]iding a forklift about 10 hours, 12 hours a day." He testified that Ford Storage had not dropped his work schedule down to 8 hours because of the restrictions and had not provided longer breaks, more breaks, or lighter duty. Dupell acknowledged, however, that he had never provided Ford Storage with any restrictions and that he never provided them with the FCE report. The Ford Storage representative who testified at trial confirmed that the company had never received any permanent work restrictions for Dupell.

PROCEDURAL BACKGROUND

The compensation court entered an order for submission of a joint pretrial memorandum on August 19, 2016, which included a provision stating that "[a]t least seven (7) calendar days prior to trial, counsel for all parties shall file with the clerk of the Workers' Compensation Court a joint pretrial memorandum addressing" items including, "A list of all exhibits the parties intend to offer at trial. . . . An exhibit not identified and produced to the opposing party at least seven (7) calendar days prior to trial is subject to exclusion from evidence." The court's order also specified, "FAILURE TO COMPLY FULLY WITH THIS ORDER MAY RESULT IN THE IMPOSITION OF APPROPRIATE SANCTIONS."

In their joint pretrial memorandum, filed on September 16, 2016, the parties stipulated to Dupell's average weekly wage; that he was injured on November 3, 2014 in the course and scope of his employment, that he was employed by Ford Storage on the date of his injury, that he reached MMI on June 29, 2016, and that he had returned to work for Ford Storage. The issues for trial identified in the parties' memorandum were (1) Dupell's entitlement to payment of medical bills and associated mileage and (2) the nature and extent of Dupell's injury and disability, and loss of earning capacity incurred as a result of the work accident. The memorandum included the parties' respective exhibit lists, and among the exhibits identified in Dupell's list were the August 2016 FCE and Doran's letter endorsing it.

Trial was held before the compensation court on September 22, 2016. Dupell offered exhibits 1 through 11. The appellants objected to Dupell's offer of exhibit 4 (Doran's endorsement of the August 2016 FCE) on the basis of foundation and timeliness. They also objected to the timeliness of exhibit 7 (the August 2016 FCE) and exhibit 8 (physical therapy notes from February through April 2016). Following argument by counsel, the court overruled the Appellants' objections and received Dupell's exhibits. The Appellants then offered exhibits 12 through 16. Dupell objected to exhibit 16 (evidence of the settlement regarding the 2007 injury) as not being relevant. The trial court reserved ruling on exhibit 16 and received the Appellants' other exhibits

into evidence. The court then heard testimony from Dupell, Dupell's wife, and a representative of Ford Storage. We have already set forth the substance of the evidence above.

On November 14, 2016, the compensation court entered an award of benefits to Dupell. The court first noted the evidentiary objections made at trial. It stated that the Appellants had been given the option of a continuance following their objections to exhibits 4, 7, and 8. The court also sustained Dupell's objection to exhibit 16 after "having an opportunity to review the exhibit in light of the evidence."

Next, the compensation court considered the nature and extent of the injury sustained by Dupell as a result of the November 2014 accident. The court stated that it was disregarding exhibit 14, the FCE completed in 2015, because it had been completed prior to Dupell's surgery and would "not be an accurate representation of his current limitations post-discectomy." The court was not persuaded by the Appellants' argument that Doran did not expressly relate the permanent restrictions to Dupell's most recent injury. The court noted that the second FCE "was ordered for a diagnosis of 'intervertebral disc displacement, lumbar region;' the injury herein." The court noted evidence that Dupell had sustained a prior work injury; however, despite having sustained the objection to exhibit 16, the court cited exhibit 16 and noted that the only permanent impairment was to Dupell's neck as he was assigned a 0-percent impairment to his low back. The court found no evidence that Dupell had any prior impairment or disability to his low back, and, taking the evidence as a whole, was "reasonably satisfied" that the restrictions were assigned by Doran as a result of Dupell's November 2014 accident.

The compensation court discussed Dupell's loss of earning capacity. The court found it was able to consider Dupell's testimony in making that determination. The court reviewed Dupell's testimony with respect to his pain and limitations, finding him to be a generally credible witness. When considering the medical evidence, Dupell's testimony, his education and background, his injury and the restrictions flowing therefrom, his current work status, together with the various factors used to determine loss of earning capacity set forth in Nebraska case law, the court found that Dupell had a 50-percent loss of earning capacity. Given the stipulated average weekly wage, the court found that Dupell was entitled to weekly benefits of $249 per week for the statutory maximum of 300 weeks less those weeks during which he received temporary total disability benefits.

Finally, the compensation court determined that the Appellants were to pay certain medical bills and mileage expenses incurred by Dupell and gave the Appellants credit for payment of other specified indemnity and medical benefits.

## ASSIGNMENTS OF ERROR

The Appellants assert that the compensation court erred in (1) accepting highly prejudicial evidence that was not disclosed to it before trial, (2) stating incorrectly in its award that the Appellants were offered a continuance, (3) finding Dupell's work accident was the proximate cause of his claimed restrictions without any evidence from a medical expert to that effect, (4) failing to receive evidence of a prior apportionable injury, (5) failing to apportion Ford Storage's payment for a prior loss of earning capacity, and (6) failing to consider medical evidence that was relevant to Dupell's work injury, physical health, and credibility.

STANDARD OF REVIEW

A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Damme v. Pike Enters.*, 289 Neb. 620, 856 N.W.2d 422 (2014). In testing the sufficiency of the evidence to support the Workers' Compensation Court's findings, an appellate court considers the evidence in the light most favorable to the successful party. *Id.* The appellate court resolves every controverted fact in the successful party's favor and gives that party the benefit of every inference that is reasonably deducible from the evidence. *Id.* The Workers' Compensation Court's factual findings have the effect of a jury verdict, and an appellate court will not disturb them unless they are clearly wrong. *Id.* An appellate court independently reviews questions of law decided by a lower court. *Id.*

Admission of evidence is within the discretion of the Workers' Compensation Court, whose determination in this regard will not be reversed upon appeal absent an abuse of discretion. *Tchikobava v. Albatross Express*, 293 Neb. 223, 876 N.W.2d 610 (2016).

ANALYSIS

*Discovery.*

The Appellants assert that the compensation court erred in accepting highly prejudicial evidence that was not disclosed to it before trial and stating incorrectly in its award that they were offered a continuance. The Appellants challenge the court's receipt into evidence of exhibit 7, the August 2016 FCE report over their objection that the report had not been timely disclosed, in violation of the court's order for submission of a joint pretrial memorandum. Appellants do not assign error to the admission of exhibit 4, Doran's endorsement of the August 2016 FCE.

The FCE was performed on August 25, 2016. The report was addressed to Doran, and a notation at the end of the report indicates it was copied to Dupell's attorney. At trial, the Appellants' attorney objected to Dupell's offer of exhibit 7 as untimely, stating that he had just received the exhibit that morning. Although the Appellants' attorney argued that exhibit 4, Doran's endorsement of the FCE, was also untimely, he stated it was received "just seven days prior to trial." The Appellants' attorney also objected that exhibit 4 lacked foundation because it referenced the FCE, which "[w]e just saw it for the first time today." Dupell's attorney stated that the FCE was emailed to another attorney of record for the Appellants as soon as he received it and that it was sent to the Appellants' attorney on the same day that Dupell's attorney received Doran's endorsement of the FCE. Dupell's attorney further stated, "As you can see, on the date of [Doran's endorsement], it's dated 9/15 and that's when they received it." The court overruled the Appellants' objections and received both exhibits, finding that they had been timely disclosed in compliance with the court's pretrial order.

The Nebraska Workers' Compensation Court is not bound by the usual common-law or statutory rules of evidence or by any technical or formal rules of procedure. *Interiano-Lopez v.*

*Tyson Fresh Meats*, 294 Neb. 586, 883 N.W.2d 676 (2016). The compensation court has, however, specifically adopted the discovery rules found in Neb. Ct. R. Disc. §§ 6-301 to 6-337, which permit the court to sanction noncompliance with a discovery order. See Workers' Comp. Ct. R. of Proc. 4 (2009). With respect to noncompliance with a discovery order, Neb. Ct. R. Disc. § 6-337(b)(2) provides that if a party "fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just" including an order "prohibiting [the disobedient party] from introducing designated matters into evidence," an order staying proceedings until the discovery order is obeyed, or an order dismissing the action.

Decisions regarding discovery are directed to the discretion of the trial court, and will be upheld in the absence of an abuse of discretion. *Moreno v. City of Gering*, 293 Neb. 320, 878 N.W.2d 529 (2016). The party asserting error in a discovery ruling bears the burden of showing that the ruling was an abuse of discretion. *Id.* A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Hill v. Tevogt*, 293 Neb. 429, 879 N.W.2d 369 (2016).

The Appellants argue that they were "highly prejudiced by the unfair surprise" of Dupell's untimely disclosure of exhibit 7, and citing § 6-337, they argue that the compensation court should have imposed an appropriate discovery sanction. Brief for appellants at 16. The Appellants note the court's incorrect statement in the award that they were offered a continuance, and they argue that the court was "suggesting that the offer of a continuance cured the prejudice that the late disclosure of [e]xhibit 7 had created." Brief for appellants at 13. Their arguments ignore the court's finding at trial that the disclosure was timely and in compliance with the pretrial order. The court's incorrect statement regarding the offer of a continuance in the award is not relevant to our consideration of whether the court abused its discretion in determining whether there had been a discovery violation. The court clearly based its ruling as to the timeliness of exhibit 7 on the information provided at the time of trial.

In their reply brief, the Appellants assert that Dupell's attorney "falsely stated" at trial that he emailed exhibits 4 and 7 to the Appellants' counsel and that he has "acknowledged this misstatement" since trial. Reply brief for appellants at 2. However, a party's brief may not expand the evidentiary record. *Clarke v. First Nat. Bank of Omaha*, 296 Neb. 632, 895 N.W.2d 284 (2017). A bill of exceptions is the only vehicle for bringing evidence before an appellate court; evidence which is not made a part of the bill of exceptions may not be considered. *In re Estate of Panec*, 291 Neb. 46, 864 N.W.2d 219 (2015).

Even if the FCE was not disclosed until the morning of trial, Neb. Ct. R. Disc. § 6-337 does not require the imposition of sanctions. The determination of an appropriate discovery sanction rests within the discretion of the trial court, and an appellate court will not disturb it absent an abuse of discretion. *Hill v. Tevogt*, 293 Neb. 429, 879 N.W.2d 369 (2016). The appropriate sanction under Neb. Ct. R. Disc. § 6-337 depends on the facts. *Hill v. Tevogt, supra.* Factors which are relevant to sanctions under Neb. Ct. R. Disc. § 6-337 include the prejudice or unfair surprise suffered by the party seeking sanctions, the importance of the evidence which is the root of the misconduct, whether the court warned the sanctioned party about the consequences of its misconduct, whether the court considered less drastic sanctions, the sanctioned party's history of

discovery abuse, and whether the sanctioned party acted willfully or in bad faith. *Hill v. Tevogt, supra*.

The facts of this case do not show the extreme prejudice suggested by the Appellants. Regardless of any offer of a continuance by the court, the Appellants could have asked for a continuance but did not do so. Further, the Appellants were on notice that a new FCE was being conducted. The record contains exhibit 3, Doran's August 15, 2016 order for the FCE, to which Appellants did not object. The joint pretrial memorandum filed 7 days before trial identified both exhibits 4 (Doran's endorsement) and 7 (the August 2016 FCE) on Dupell's exhibit list. And, as noted above, the Appellants admit to receiving Doran's endorsement of the FCE with his stated restrictions 7 days prior to trial which was in compliance with the pretrial order. Finally, the Appellants conducted a thorough cross-examination of Dupell at trial with respect to his ability to perform his current job at Ford Storage.

We find no abuse of discretion in the compensation court's determination that there was no discovery violation or in its failure to impose sanctions.

*Proof of Permanent Impairment.*

In this case, the parties stipulated that "[o]n November 3, 2014 [Dupell] was injured in the course and scope of his employment" and that he was an employee of Ford Storage. They also stipulated to his average weekly wage and that he reached MMI on June 29, 2016. The issue before the court as relevant to the Appellants' second assignment of error was the nature and extent of Dupell's injury and disability and loss of earning capacity. The Appellants do not specifically assign error to the compensation court's determination that Dupell sustained a 50-percent loss of earning capacity. Rather, they assert that the court erred in finding Dupell's work accident was the proximate cause of his claimed restrictions without any evidence from a medical expert to that effect.

The Nebraska Supreme Court has stated that the employee has the burden of proving that his injury caused permanent impairment as a predicate to an award for permanent disability, i.e., loss of earning capacity. See *Visoso v. Cargill Meat Solutions*, 285 Neb. 272, 826 N.W.2d 845 (2013). See, also, *Green v. Drivers Mgmt., Inc.*, 263 Neb. 197, 639 N.W.2d 94 (2002). The determination of causation is ordinarily a matter for the trier of fact. *Hynes v. Good Samaritan Hosp.*, 291 Neb. 757, 869 N.W.2d 78 (2015). The issue of whether the claimant has sustained a permanent impairment, and the extent of impairment, are questions of fact. *Green v. Drivers Mgmt., Inc., supra*. If the nature and effect of a claimant's injury are not plainly apparent, then the claimant must provide expert medical testimony showing a causal connection between the injury and the claimed disability. *Tchikobava v. Albatross Express*, 293 Neb. 223, 876 N.W.2d 610 (2016). Although medical restrictions or impairment ratings are relevant to a claimant's disability, the trial judge is not limited to expert testimony to determine the degree of disability but instead may rely on the testimony of the claimant. *Id*.

Without a finding of permanent medical impairment, there can be no permanent restrictions. *Swanson v. Park Place Automotive*, 267 Neb. 133, 672 N.W.2d 405 (2003). Without impairment or restrictions, there can be no disability or labor market access loss. *Id*. The term "impairment" is a medical assessment, while the term "disability" is a legal issue. *Id*. Permanent

medical impairment is related directly to the health status of the individual, whereas disability can be determined only within the context of the personal, social, or occupational demands or statutory or regulatory requirements that the individual is unable to meet as a result of the impairment. *Id*.

The Appellants argue that Dupell failed to meet his burden because he offered no medical opinion specifically relating the restrictions from the August 2016 FCE to his November 2014 accident and injury. The compensation court rejected this argument below and found sufficient causal connection, noting that the August 2016 FCE "was ordered for a diagnosis of 'intervertebral disc displacement, lumbar region;' the injury herein." The court further found that there was no evidence that Dupell had any prior impairment or disability to his low back (noting that there was 0-percent impairment to his low back in the 2007 accident). Taking the evidence as a whole, the compensation court was "reasonably satisfied that the restrictions were assigned by Dr. Doran as a result of [Dupell's] November 3, 2014 [accident]. . . ."

Our review of the entire record supports the compensation court's determination regarding causation. The parties stipulated that Dupell was injured on November 3, 2014, in the course and scope of his employment with Ford. In October 2015, Doran compared a recent MRI with one taken in November 2014. The 2015 MRI report references Dupell's history of right-sided lower back and buttock pain from a 2014 work-related accident. Upon comparing the MRIs, Doran noted a progression in Dupell's disc bulge at L4-5 with significant nerve root compression which would correlate with Dupell's leg pain, and recommended a right L4-5 discectomy. When Bixenmann conducted an independent medical examination of Dupell in November 2015, he clearly tied Dupell's diagnosis of "intervertebral disc herniation with radiculopathy" to the November 2014 accident and assigned a 9-percent whole body impairment rating. Bixenmann felt that the microdiscectomy procedure at the L4-5 level would improve Dupell's pain and recommended certain work restrictions. Subsequently, Doran performed the recommended L4-5 microendoscopic discectomy, after which Doran assigned Dupell a 13-percent impairment of the whole person. Although Dupell returned to work following the surgery without restrictions, following the August 2016 FCE, which was ordered for Dupell's diagnosis of "intervertebral disc displacement, lumbar region," Doran agreed with the FCE report and imposed certain restrictions. Thus, viewing the medical records as a whole, Dupell was diagnosed with intervertebral disc herniation or displacement as a result of his 2014 injury, surgery was performed for this diagnosis, and the 2016 FCE was performed to assess the restrictions arising from this diagnosis after the surgery.

In a workers' compensation case, the medical history contained in medical records does not establish causation; however, the meaning of the words in a medical record can be interpreted in their larger context and not read literally. See *Lounnaphanh v. Monfort, Inc.*, 7 Neb. App. 452, 583 N.W.2d 783 (1998). The sufficiency of an expert's opinion is judged in the context of the expert's entire statement. *Zitterkopf v. Aulick Indus.*, 16 Neb. App. 829, 753 N.W.2d 370 (2008). An appellate court examines the sufficiency of a medical expert's statements from the expert's entire opinion and the record as a whole. *Damme v. Pike Enters.*, 289 Neb. 620, 856 N.W.2d 422 (2014). See *Frank v. A & L Insulation*, 256 Neb. 898, 594 N.W.2d 586 (1999) (physician's statement sufficient to establish medical causation when examined in larger context of physician's entire opinion and record as whole).

Considering the record as a whole and in the light most favorable to Dupell, we conclude that the trial judge could find sufficient medical causation between the 2014 work-related accident and Doran's permanent impairment rating and restrictions.

*Apportionment.*

The Appellants assert that the compensation court erred in failing to receive evidence of a prior apportionable injury and in failing to apportion Ford Storage's payment for a prior loss of earning capacity. Specifically, the Appellants assert that the court should have received exhibit 16, evidence of the settlement regarding Dupell's 2007 injury. Exhibit 16 includes the parties' application for an order approving the lump sum settlement and related documents, including a doctor's note that Dupell had sustained permanent disability to the cervical spine of 5 percent and 0 percent to the lumbar spine. The Appellants argue that exhibit 16 should have been received as it was relevant to the issue of apportionment.

As a general rule, the Nebraska Workers' Compensation Court is not bound by the usual common-law or statutory rules of evidence, but its discretion to admit evidence is subject to the limits on constitutional due process. *Tchikobava v. Albatross Express*, 293 Neb. 223, 876 N.W.2d 610 (2016). In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party. *Id*. The exclusion of evidence is ordinarily not prejudicial where substantially similar evidence is admitted without objection. *Id*. Where evidence is cumulative to other evidence received by the court, its exclusion will not be considered prejudicial error. *Id*.

The compensation court's exclusion of exhibit 16 was not prejudicial. Exhibit 16 does clarify that at the time of the 2007 accident, the doctor assigned 5-percent impairment to Dupell's cervical spine and 0-percent impairment to Dupell's lumbar spine. However, other substantially similar evidence was admitted without objection and some of the information in exhibit 16 is cumulative to other evidence received by the court showing that the 2007 injury was primarily to Dupell's neck and that a doctor assigned a 5-percent impairment rating. Further, had exhibit 16 been admitted into evidence, we conclude that it would not have changed the outcome on the issue of apportionment.

To be apportionable, an impairment must have been independently producing some degree of disability before an accident and must be continuing to operate as a source of disability after the accident. *Martinez-Najarro v. IBP, inc.*, 12 Neb. App. 504, 678 N.W.2d 114 (2004). In terms of the test for determining when apportionment is appropriate, the term "disability" contemplates impairment of earning capacity, not functional disability. *Id*. The problem of apportionment may be encountered between an employer and an employee when disability from a prior injury contributes to a claimant's total disability following a subsequent injury. *Id*. Apportionment occurs after the loss of earning capacity for a current injury has been determined; the amount of loss of earning capacity for which the claimant has already been compensated is deducted from the subsequent loss of earning capacity. *Id*.

In *Cummings v. Omaha Public Schools*, 6 Neb. App. 478, 574 N.W.2d 533 (1998), this court found apportionment appropriate. In that case, an employee sustained a work-related injury that exacerbated a prior compensated work-related injury. The employee was awarded benefits for

a 25-percent loss of earning capacity for his prior accident and that prior disability continued as a source of lost earning capacity even after the employee's subsequent accidents. Because the employee had already been compensated for the prior disability, we found he could not be compensated again for the original 25-percent disability caused by the prior injury.

Here, although Dupell was compensated for a 5-percent disability in connection with his 2007 injury, there is no evidence that his 2007 injury is continuing to act as a source of lost earning capacity following the 2014 accident. Further, there is no evidence which suggests that the 2014 injury to Dupell's lower back was an aggravation of any back injury from the 2007 accident.

The compensation court did not err in failing to apportion Ford Storage's payment for a prior loss of earning capacity.

*Consideration of Evidence.*

The Appellants assert that the compensation court erred in failing to consider medical evidence that was relevant to Dupell's work injury, physical health, and credibility. Specifically, they claim that the court erred in disregarding exhibit 14, the 2015 FCE with invalid test results. While they agree that the FCE cannot be used as a representation of Dupell's current limitations, they argue that exhibit 14 should have been considered in conjunction with the subsequent FCE, which had its own "validity issues," because it was "highly relevant to the extent of [Dupell's] injury, physical health, and credibility." Brief for appellants at 25.

The compensation court did not entirely exclude exhibit 14 from evidence. We find no error in its decision to rely more heavily on the subsequent FCE as a more accurate representation of Dupell's current restrictions. The court was clearly aware of the validity issues with respect to both FCEs, and in terms of credibility, overall it generally found Dupell to be a credible witness. As the trier of fact, the single judge of the Workers' Compensation Court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Nichols v. Fairway Bldg. Prods.*, 294 Neb. 657, 884 N.W.2d 124 (2016). This assignment of error is without merit.

## CONCLUSION

We find no error in the compensation court's evidentiary rulings or in its findings regarding causation of Dupell's loss of earning capacity. Accordingly, we affirm the award in its entirety.

AFFIRMED.