Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/08/2019 09:06 AM CDT

Halina Picard, appellee, v. P & C Group 1, Inc.,
doing business as Camaco, LLC, and
Hartford Fire Insurance
Company, appellants.

___ N.W.2d ___

Filed October 1, 2019.    No. A-18-207.

1. **Workers' Compensation: Appeal and Error.** An appellate court may
   modify, reverse, or set aside a Workers' Compensation Court decision
   only when (1) the compensation court acted without or in excess of its
   powers; (2) the judgment, order, or award was procured by fraud; (3)
   there is not sufficient competent evidence in the record to warrant the
   making of the order, judgment, or award; or (4) the findings of fact by
   the compensation court do not support the order or award.
2. ____: ____. Determinations by a trial judge of the Workers'
   Compensation Court will not be disturbed on appeal unless they are
   contrary to law or depend on findings of fact which are clearly wrong in
   light of the evidence.
3. **Workers' Compensation: Proof.** A claimant is entitled to an award
   under the Nebraska Workers' Compensation Act for a work-related
   injury disability if the claimant shows, by a preponderance of evidence,
   that the claimant sustained the injury and disability proximately caused
   by an accident which arose out of and in the course of the claimant's
   employment, even though a preexisting disability or condition had com-
   bined with the present work-related injury to produce the disability for
   which the claimant seeks an award.
4. **Workers' Compensation.** To be apportionable, an impairment must
   have been independently producing some degree of disability before
   the accident, and must be continuing to operate as a source of disability
   after the accident.
5. **Workers' Compensation: Words and Phrases.** In terms of the test for
   determining when apportionment is appropriate, the term "disability"
   contemplates impairment of earning capacity, not functional disability.

6. **Workers' Compensation.** Absent a statute requiring apportionment, the doctrine of apportionment is not applicable.

7. **Workers' Compensation: Intent.** The principal purpose of the Nebraska Workers' Compensation Act is to provide an injured worker with prompt relief from the adverse economic effects caused by a work-related injury or occupational disease.

8. **Workers' Compensation: Attorney Fees: Penalties and Forfeitures: Time.** Neb. Rev. Stat. § 48-125 (Cum. Supp. 2016) authorizes a 50-percent penalty payment for waiting time involving delinquent payment of compensation and attorney fees, where there is no reasonable controversy regarding an employee's claim for workers' compensation.

9. **Workers' Compensation: Attorney Fees.** Whether a reasonable controversy exists pertinent to Neb. Rev. Stat. § 48-125 (Cum. Supp. 2016) is a question of fact.

10. **Workers' Compensation: Attorney Fees: Words and Phrases: Appeal and Error.** A reasonable controversy may exist (1) if there is a question of law previously unanswered by the Supreme Court, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act, or (2) if the properly adduced evidence would support reasonable but opposite conclusions by the compensation court concerning an aspect of an employee's claim for workers' compensation, which conclusions affect allowance or rejection of an employee's claim, in whole or in part.

Appeal from the Workers' Compensation Court. Julie A. Martin, Judge. Affirmed in part, and in part reversed and vacated.

Jessica R. Voelker, of Law Office of Steven G. Piland, for appellants.

Lee S. Loudon and Joseph A. Huckleberry, of Law Office of Lee S. Loudon, P.C, L.L.O., for appellee.

Riedmann, Bishop, and Welch, Judges.

Welch, Judge.

## INTRODUCTION

P & C Group 1, Inc., doing business as Camaco, LLC (P&C Group), and Hartford Fire Insurance Company (Appellants)

appeal from an order of the Nebraska Workers' Compensation Court awarding Halina Picard compensation for a 75-percent loss of earning capacity due to a 2012 work-related accident and for a 55-percent loss of earning capacity due to a 2015 work-related accident, with no reduction in the second award due to apportionment from the first award. For the reasons set forth herein, we affirm in part, and in part reverse and vacate the award of attorney fees, penalties, and costs.

## STATEMENT OF FACTS

Since 1989, Picard has worked as a production worker for P&C Group in a variety of positions. In April 2012, her duties included loading and unloading parts from robotic welders and stocking parts. On April 24, Picard felt a severe pain in both hands causing her to drop the parts that she was holding. She informed her supervisor and sought medical treatment. She was referred to Dr. Jeffrey Tiedeman, who performed surgery on her wrists in June. Dr. Tiedeman eventually released Picard to work with permanent restrictions.

In September 2015, Picard was working at P&C Group in a position that accommodated her permanent restrictions. On September 9, Picard experienced severe back pain as she bent over to pick up parts. She testified that she was almost unable to walk and sought medical attention. She was referred to Dr. Geoffrey McCullen, who eventually performed surgery on her back. Following her surgery, Picard returned to work at P&C Group and, up until the time of trial, had performed the same job she performed prior to her September 2015 injury.

Picard filed two claims against P&C Group and its insurer, Hartford Fire Insurance Company, relating to the injuries she received while working for P&C Group in 2012 and 2015. These cases were consolidated by the Workers' Compensation Court. Trial in this matter was held in December 2017.

At the time of trial, Picard was 62 years old. She testified that she was born in Poland, attended "[e]ighth grade school and five year college," and had worked selling jewelry in

Poland. In 1982, she moved to the United States, and in 1987, she obtained a job assembling electronics. After this job, she worked for P&C Group for a few months before being laid off. She then found a job labeling boxes and meat in a meat-packing plant. In 1989, Picard was rehired by P&C Group and worked there through the time of trial.

## Medical Evidence

After the April 2012 injury, Dr. Tiedeman diagnosed Picard with bilateral carpal tunnel syndrome, and in June, he performed a carpal tunnel release surgery on her wrists. After some temporary restrictions, Dr. Tiedeman placed Picard on a permanent restriction of lifting no more than 5 pounds and recommended that she do no more than occasional work above shoulder level. In October, Dr. Tiedeman wrote that, in his opinion, Picard had reached maximum medical improvement and had a 10-percent permanent partial impairment of each hand.

In November 2017, a doctor performed an independent medical evaluation of Picard's carpal tunnel condition on behalf of P&C Group. He opined that the symptoms in Picard's hands would not improve significantly. He agreed that Picard should be restricted to lifting no more than 5 pounds and recommended a restriction that Picard "avoid use of vibratory tools."

After Picard's September 2015 injury, Dr. McCullen diagnosed her with a herniated disk and performed a micro-diskectomy operation on her spine. Dr. McCullen assigned permanent restrictions to Picard of no bending to the floor; only occasional bending, squatting, or twisting; and no lifting greater than 10 pounds. Dr. McCullen clarified that "[t]he restrictions above are for the spine," not the hands, and stated that Picard could continue in her then-current position at P&C Group. Dr. McCullen opined within a reasonable degree of medical certainty that Picard suffered a 13-percent impairment of the whole body.

### Stipulations Prior to Trial

Prior to trial, the parties stipulated to matters relevant to this appeal. Regarding the 2012 accident involving Picard's wrists, the parties stipulated that (1) Picard's average weekly wage at the time of her injury was $694.12; (2) P&C Group paid Picard temporary total disability benefits for 7⁴⁄₇ weeks from June 18 through 25, 2012, and January 7 through February 10, 2013, at the rate of $462.75 totaling $3,503.68; (3) P&C Group paid Picard permanent partial disability benefits totaling $18,817.19 and is entitled to a credit for the permanent partial disability benefits paid; (4) if Picard's 2012 injury to her hands is compensated as a scheduled member injury under Neb. Rev. Stat. § 48-121(3) (Reissue 2010), a 10-percent impairment to Picard's bilateral hands equates to 35 total weeks (175 weeks × 10 percent × 2). At the rate of $462.75, Picard would be entitled to $16,196.25 if the court finds that Picard is not entitled to permanent partial disability benefits based upon her loss of earning power. As such, the parties stipulated that regarding Picard's 2012 injury, the genuinely controverted issues to be resolved by the court at the time of trial relevant to this appeal were (1) whether Picard was adequately compensated for her April 24, 2012, injuries with a scheduled member injury award, or (2) whether Picard was entitled to additional compensation for loss of earning power benefits as a result of suffering more than one scheduled member injury from one accident.

The parties then stipulated to the following regarding the 2015 accident involving Picard's back: (1) that Picard suffered an accident and injury on September 9, 2015, and (2) that P&C Group has paid 12 weeks of temporary total disability from June 24 through September 15, 2016, at the rate of $403.55 totaling $4,035.50. The parties further stipulated that regarding Picard's 2015 injury, the genuinely controverted issues to be resolved by the court at the time of trial and relevant to this appeal were (1) whether Picard suffered any loss of earning power as a result of the September 9, 2015, accident;

(2) whether Picard was entitled to apportion any loss of earning power benefits attributable to the April 24, 2012, accident and injury toward any benefits that may be due and owing for loss of earning power for the September 9, 2015, accident; and (3) whether Picard is entitled to penalties, attorney fees, and interest for P&C Group's failure to pay any permanent disability benefits for loss of earning power.

## Vocational Evidence

In addition to the above-stated stipulations, the parties stipulated to having Kim Rhen perform a loss of earning capacity analysis in connection with Picard's 2015 injury. Based on the restrictions that Dr. McCullen assigned for Picard's back, Rhen estimated Picard's total loss of earning capacity from the 2015 injury to be 50 percent—or 55 percent if still employed at P&C Group. Rhen provided two possibilities, because there was a dispute regarding Picard's average weekly wage. Rhen was then appointed by the court to perform a vocational evaluation for Picard's 2012 injury. Based on the restrictions that Dr. Tiedeman assigned for Picard's carpal tunnel syndrome, Rhen estimated Picard's total loss of earning capacity from the 2012 injury at 60 percent if still employed at P&C Group. Rhen found that the restrictions from either of Picard's two injuries were independently sufficient to make Picard unemployable outside of P&C Group, but she believed that Picard was competitively employed at P&C Group. Rhen also noted that the higher earning capacity loss for the 2012 injury was because Picard had a higher average weekly wage before the 2012 injury.

After Picard's first injury, she was no longer eligible for overtime. After each injury, she continued to receive yearly raises to her hourly pay similar to uninjured employees and has not had her hourly pay reduced. Upon Picard's completion of her shift at work, someone on the next shift performs the same job functions she performs. There are eight other jobs at P&C Group that Picard could transfer to and perform with

no accommodations or assistance, as well as other jobs for which P&C Group could accommodate her. Picard testified that she had worked in her current position for over 3 years and had not received any negative performance reviews, been demoted, or had her pay reduced. She has been satisfied with P&C Group and plans to continue employment there.

### Compensation Court Order

In February 2018, the Workers' Compensation Court issued an award following trial on the consolidated matters. As to Picard's 2012 injury, the court stated:

[P&C Group contends that Picard] has been adequately compensated for her injuries based upon the 10 percent bilateral hand impairment. [Picard] argues she is entitled to compensation in the form of a loss of earnings capacity assessment under *Neb. Rev. Stat.* § 48-121(3), which provides: "If, in the compensation court's discretion, compensation benefits payable for a loss or loss of use of more than one member or parts of more than one member set forth in this subdivision, resulting from the same accident or illness, do not adequately compensate the employee for such loss or loss of use and such loss or loss of use results in at least a thirty percent loss of earning capacity, the compensation court shall, upon the request of the employee, determine the employee's loss of earning capacity consistent with the process for such determination under subdivision (1) or (2) of this section, and in such a case the employee shall not be entitled to compensation under this subdivision." Based upon the written evidence, her permanent work restrictions, and the testimony of [Picard], the Court finds . . . Picard has not been adequately compensated for the injuries to her hands under the schedule established in *Neb. Rev. Stat.* §48-121(3).

. . . .

. . . Thus, based upon the testimony of the witnesses, the written evidence submitted herein, and the factors set forth under *Sidel*, it is this Court's own factual finding that [Picard] has suffered a 75 percent loss of earning power as a result of the accident and injury of April 24, 2012, which entitles her to the sum of $347.06 per week for 292 3/7 weeks.

As to the 2015 injury, the court found:

After considering all the written evidence, [Picard's] testimony, her current employability, the Court's own observations, together with the various factors used to determine loss of earning capacity as set forth in *Sidel v. Travelers Ins. Co.*, 205 Neb. 541, 288 N.W.2d 482 (1980), the Court adopts the opinions of the agreed-upon counselor and finds [Picard] has a loss of earning capacity of 55 percent as a result of the accident and injury of September 9, 2015, which entitles her to the sum of $229.01 per week for 288 weeks.

In addressing P&C Group's request for apportionment, the court held:

[Appellants assert that] any loss of earning capacity assigned to [Picard] for the 2015 accident should be apportioned. "To be apportionable, an impairment must have been independently producing some degree of disability before an accident and must be continuing to operate as a source of disability after the accident. *Jacob v. Columbia Ins. Group*, 2 Neb. App. 473, 491, 511 N.W.2d 211, 221 (1994) (quoting 2 Arthur Larson, The Law of Workmen's Compensation § 59.22(c) (1993)). The term "disability" contemplates impairment of earning capacity, not functional disability. *Cummings v. Omaha Public Schools*, 6 Neb. App. 478, 486, 574 N.W.2d 533, 539 (1998). The problem with apportionment typically occurs between an employer and an employee when disability from a prior injury contributes to a claimant's total disability

following a subsequent injury. *Martinez-Najarro v. IBP, Inc.*, 12 Neb. App. 504, 678 N.W.2d 114 (2004).

After further quoting from *Martinez-Najarro v. IBP, inc.*, 12 Neb. App. 504, 678 N.W.2d 114 (2004), and later in the opinion, the court ultimately held:

> The undersigned will admit to being perplexed by [Appellants'] argument. They are claiming apportionment for the back claim but at the same time arguing [Picard's] carpal tunnel injuries should be compensated as scheduled member injuries. Apportionment is only appropriate when the employee has already been compensated for a disability in terms of a loss of earnings. *Martinez* at 510, 678 N.W.2d 114, 121. According to the evidence, . . . Picard was not paid for a loss of earnings for the 2012 claim. Additionally, . . . Picard's injuries are to different parts of her body—hands and low back. As with Martinez, she still would have sustained a loss of earnings for her back irrespective of her bilateral carpal tunnel injuries. *Id*. Apportionment is not appropriate under the facts of the present case.

Finally, the court awarded Picard $20,000 in attorney fees relating to the 2015 injury. The court specifically found that there was no reasonable controversy governing the substance of the 2015 award and that therefore, the attorney fees, penalties, and interest provisions of Neb. Rev. Stat. § 48-125 (Cum. Supp. 2016) were applicable. Appellants now appeal.

## ASSIGNMENTS OF ERROR

Appellants contend that the trial court erred (1) in finding that apportionment does not apply, (2) in assessing loss of earning power to the September 2015 injury, and (3) in awarding attorney fees and penalties.

## STANDARD OF REVIEW

[1,2] An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the

compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. See *Gimple v. Student Transp. of America*, 300 Neb. 708, 915 N.W.2d 606 (2018). Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence. *Id.*

## ANALYSIS

This case presents the issue of the interrelation of successive workers' compensation injuries and awards. As it relates to this appeal, the Workers' Compensation Court held that (1) Picard was entitled to a body as a whole award (lost earning capacity) for the bilateral injuries to her wrists in 2012, (2) Picard was entitled to a body as a whole award for injury to her back in 2015, (3) the court's 2015 award for Picard's back should not be reduced because of Picard's 2012 injuries or the court's award for Picard's wrists, and (4) Picard was entitled to an award of attorney fees and costs under these circumstances.

Appellants do not challenge the court's finding that Picard was entitled to a body as a whole award for the bilateral injuries to her wrists in 2012. Instead, they argue that the court erred in not apportioning the 2015 award as a result of its 2012 award or, in the alternative, that the court erred in finding the permanent physical limitations from Picard's 2012 wrist injuries do not impact the 2015 award. We will address these arguments independently.

### APPORTIONMENT

Appellants first argue that the court erred in failing to apportion the disability benefits awarded for the 2015 accident

with the disability benefits awarded for the 2012 accident. This argument requires us to determine whether a prior body as a whole injury resulting in compensation for lost earning capacity should be apportioned with an award for a successive body as a whole injury, albeit when the successive injury is to a different part of the body.

[3] In order to properly analyze this issue, we begin with a review of prior case law in the areas of successive injuries. In *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990), the Nebraska Supreme Court considered whether an employee's preexisting back condition should diminish a disability award when the employee's back injury was later aggravated resulting in further disability. In finding that the preexisting condition of the employee's back injury should not reduce his recovery, the court held:

> [A] claimant is entitled to an award under the [Nebraska] Workers' Compensation Act for a work-related injury disability if the claimant shows, by a preponderance of evidence, that the claimant sustained the injury and disability proximately caused by an accident which arose out of and in the course of the claimant's employment, even though a preexisting disability or condition had combined with the present work-related injury to produce the disability for which the claimant seeks an award. *Spangler v. State*, 233 Neb. 790, 448 N.W.2d 145 (1989); *Cole v. Cushman Motor Works*, 159 Neb. 97, 65 N.W.2d 330 (1954); *Tucker v. Paxton & Gallagher Co.*, 153 Neb. 1, 43 N.W.2d 522 (1950). Thus, allocation of disability attributable to a work-related injury and disability attributable to an antecedent or preexisting disability or condition which may or may not be work-related is irrelevant in this case inasmuch as there is no claim against the Second Injury Fund.

*Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. at 473, 461 N.W.2d at 575.

In *Cummings v. Omaha Public Schools*, 6 Neb. App. 478, 574 N.W.2d 533 (1998), this court considered whether the rule espoused in *Heiliger* applied similarly when the aggravated preexisting condition involved a body as a whole injury which was previously compensated under workers' compensation laws. In *Cummings*, the employee suffered a back injury in 1984 for which he was compensated for lost earning capacity relating thereto. From 1992 through 1994, the employee exacerbated his back injury during the course and scope of his employment, for which he made a separate workers' compensation claim. Unlike in *Heiliger*, the Workers' Compensation Court in *Cummings* apportioned the claimant's recovery between the previously compensated injury and the new injuries.

In affirming the award, this court reasoned that neither *Heiliger v. Walters & Heiliger Electric, Inc., supra*, nor *Jacob v. Columbia Ins. Group*, 2 Neb. App. 473, 511 N.W.2d 211 (1994), "prohibit apportioning a claimant's recovery for disability between a prior, compensated injury to the body as a whole and a subsequent compensable injury to the body as a whole." *Cummings v. Omaha Public Schools*, 6 Neb. App. at 485, 574 N.W.2d at 539. In reaching this conclusion, this court first distinguished *Heiliger* in saying:

> *Heiliger* is distinguishable from the present case, however, because the claimant in *Heiliger* had not been compensated for the prior injury or the disability resulting therefrom. As such, *Heiliger* does not stand for the proposition that a claimant who has once received compensation for disability occasioned by a prior injury is entitled to be compensated again for the original disability when a subsequent injury exacerbates the prior disability.

*Cummings v. Omaha Public Schools*, 6 Neb. App. at 485, 574 N.W.2d at 539.

[4,5] The *Cummings* court further distinguished *Jacob v. Columbia Ins. Group, supra*, in stating:

In *Jacob v. Columbia Ins. Group, supra*, this court discussed apportionment and applied apportionment to a factual situation involving injuries to separate but related members, rather than injuries to the body as a whole. We held that "'[t]o be apportionable, then, an impairment must have been independently producing some degree of disability before the accident, and must be continuing to operate as a source of disability after the accident.'" 2 Neb. App. at 491, 511 N.W.2d at 221. In terms of this test for determining when apportionment is appropriate, the term "disability" contemplates impairment of earning capacity, not functional disability. *Id.* Additionally, we noted that the problem of apportionment may be encountered between an employer and an employee when disability from a prior injury contributes to a claimant's total disability following a subsequent injury. *Id.*

On the facts of *Jacob*, we held that it was not appropriate to apportion a claimant's disability between a prior work-related accident where the claimant lost a finger and a subsequent work-related accident where he essentially lost his entire hand. Because both injuries were injuries to members, rather than injuries to the body as a whole, the claimant did not suffer any disability in terms of loss of earning capacity, as distinguished from functional disability, from the prior injury, and the award which he received for the prior injury did not need to be deducted from the disability benefits for which he was entitled as a result of the subsequent injury. See *id.*

*Cummings v. Omaha Public Schools*, 6 Neb. App. 478, 485-86, 574 N.W.2d 533, 539-40 (1998).

We held in *Cummings*, after applying the facts in that case to the "test established in *Jacob* for determining the appropriateness of apportionment," that

the compensation court did not err in apportioning Cummings' disability between the prior, compensated

injury and the subsequent series of injuries. Cummings'
prior back injury independently produced some degree of
lost earning capacity, as indicated by his prior award of
benefits for a 25-percent loss of earning capacity resulting
from the prior accident. Additionally, the prior disability
is continuing to act as a source of lost earning capacity
even after the subsequent series of accidents.

As such, because Cummings was already compensated
for the prior disability, he is not entitled to receive com-
pensation now beyond whatever additional disability can
be attributed to the subsequent series of injuries or its
aggravation of his prior condition. He is not entitled to be
compensated again for the original 25-percent disability
caused by the prior injury. The evidence in the record
uniformly indicates that Cummings is entitled to benefits
for a 5-percent loss of earning capacity caused by the
subsequent series of injuries and its aggravation of his
prior condition.

6 Neb. App. at 486-87, 574 N.W.2d at 540.

Having addressed apportionment in connection with a pre-
viously uncompensated body as a whole injury aggravated in
a successive work-related accident in *Heiliger v. Walters &
Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990);
a previously compensated member injury followed by a suc-
cessive work-related member injury in *Jacob v. Columbia Ins.
Group*, 2 Neb. App. 473, 511 N.W.2d 211 (1994); and a previ-
ously compensated body as a whole injury aggravated in a suc-
cessive work-related accident in *Cummings v. Omaha Public
Schools, supra*, this court had occasion to review a previously
uncompensated member injury followed by a successive body
as a whole injury in *Martinez-Najarro v. IBP, inc.*, 12 Neb.
App. 504, 678 N.W.2d 114 (2004). In *Martinez-Najarro*, an
employee suffered a shoulder injury in 1997 resulting in a
34-pound lifting restriction; however, the record did not estab-
lish whether he was previously compensated for that injury. In
1999, the employee suffered a work-related hernia, a body as a

whole injury for which he was given a 30-pound lifting restriction and for which he sought compensation. The Workers' Compensation Court apportioned the disabilities relating to the injuries and awarded the employee only a 5-percent loss of earning power, reasoning that the prior 34-pound lifting restriction from the prior shoulder injury provided the bulk of his lost earning power and that little additional disability was caused by the hernia.

In reversing the award, we noted that, like *Heiliger v. Walters & Heiliger Electric, Inc., supra*, the preexisting shoulder condition of the employee was not previously compensated as a whole body injury (at least record did not establish prior compensation) thereby distinguishing *Martinez-Najarro v. IBP, inc., supra*, from *Cummings v. Omaha Public Schools, supra*. Additionally, like *Jacob v. Columbia Ins. Group, supra*, the preexisting shoulder condition of the employee would be a scheduled member injury under the workers' compensation statutes, meaning the employee, even if compensated, would have been compensated for a scheduled member injury and not compensated for lost earning capacity. *Martinez-Najarro v. IBP, inc., supra*. See, also, *Rodriguez v. Monfort, Inc.*, 262 Neb. 800, 810, 635 N.W.2d 439, 448 (2001) (holding that, because claimant's injuries were scheduled member injuries, not injuries to "body as a whole," any loss of earning capacity claimant may have sustained was irrelevant to computing his compensation).

Notwithstanding the holding in *Martinez-Najarro*, in dicta, this court also noted:

Martinez' injuries were to different parts of his body. According to *Jacob*, the usual apportionment statute would entitle Martinez to compensation for a disability that would have existed if the prior injury had not occurred. Even if Martinez had not had a prior 34-pound lifting restriction from his shoulder injury, his hernia still would have resulted in a 30-pound lifting restriction. The two injuries were not related, so the second

injury would not have been less had the first injury not occurred.

*Martinez-Najarro*, 12 Neb. App. at 513, 678 N.W.2d at 123.

Based upon this language, the Workers' Compensation Court in the case at bar stated in its award governing the 2015 injury:

[In *Martinez-Najarro*,] IBP argued the award should be apportioned since Martinez's prior disability continued to operate as a source of disability at the time of the second injury. The Court [of Appeals] rejected this argument because Martinez's injuries were to different parts of his body, stating "[e]ven if Martinez had not had a prior 34-pound lifting restriction from his shoulder injury, his hernia still would have resulted in a 30-pound lifting restriction. The two injuries were not related, so the second injury would not have been less had the first injury not occurred. Furthermore, there is no evidence that Martinez was compensated for the injury which gave rise to his prior 34-pound lifting restriction." *Id*. at 513, 678 N.W.2d 114, 123.

. . . Apportionment is only appropriate when the employee has already been compensated for a disability in terms of a loss of earnings. *Martinez* at 510, 678 N.W.2d 114, 121. According to the evidence, . . . Picard was not paid for a loss of earnings for the 2012 claim. Additionally, . . . Picard's injuries are to different parts of her body—hands and low back. As with Martinez, she still would have sustained a loss of earnings for her back irrespective of her bilateral carpal tunnel injuries. *Id*. Apportionment is not appropriate under the facts of the present case.

In determining whether apportionment is applicable to these facts, we must first determine the definition of apportionment. Although our prior case law does not appear to clearly define it, we note a statement we made in *Jacob v. Columbia Ins. Group*, 2 Neb. App. 473, 511 N.W.2d 211 (1994). There, we

stated: "The parties agree that the question before the court is really one of whether Nebraska is an apportionment state. We are unable to find any cases holding that Nebraska is or is not an apportionment state." *Id*. at 490, 511 N.W.2d at 221. We then went on to quote from Prof. Arthur Larson, a notable academic on workers' compensation law. In doing so, we noted Professor Larson's discussion of cases from other jurisdictions governing the issue of apportionment, including the following:

> "The problem of apportionment of a compensable loss is encountered in three principal forms: between successive employers or carriers, when the final disability is traceable to exposures or incidents under two or more of them; between an employer and a Second Injury fund, when a preexisting condition covered by the Fund is involved; and between an employer and the employee himself, when a prior personal disability contributes to the final disabling result." 2 Arthur Larson, The Law of Workmen's Compensation § 59.20 at 10-492.337 to 10-492.339 (1993).

*Jacob*, 2 Neb. App. at 490, 511 N.W.2d at 221. We then quoted Professor Larson's continuing analysis on apportionment:

> "Note, however, that this combining of a prior non-disabling condition and a later work-connected injury may produce compensable aggravated disability even though the one does not act directly upon the other. For example . . . . It will be observed that the courts in these cases define preexisting disability, not as functional disability, but as disability in the compensation sense of impairment of earning capacity. This approach is put to its sharpest test when the prior impairment was in the form of loss of specific members covered by the schedule. For example, when a claimant, although he had earlier lost three fingers of his left hand, had continued to work at regular employment, and then lost his entire left hand, he was held entitled to compensation for the hand

without deduction for the schedule value of the fingers."
[2 Arthur Larson, The Law of Workmen's Compensation]
at § 59.22(c) at 10-492.394 to 10-492.395.

*Jacob*, 2 Neb. App. at 490-91, 511 N.W.2d at 221. We finally quoted the following observation from Professor Larson's work:

"This is correct under the usual apportionment statute, which allows compensation for the disability that would have existed if the prior injury had not occurred, since the final effect of loss of the hand itself is the same whether several fingers were previously missing or not. . . .

"To be apportionable, then, an impairment must have been independently producing some degree of disability before the accident, and must be continuing to operate as a source of disability after the accident." [2 Arthur Larson, The Law of Workmen's Compensation] at 10-492.396 to 10-492.397.

*Jacob*, 2 Neb. App. at 491, 511 N.W.2d at 221.

We then concluded in *Jacob v. Columbia Ins. Group*, 2 Neb. App. 473, 511 N.W.2d 211 (1994), that because the original injury did not continue to produce disability before the second accident, the claimant was entitled to compensation for the second injury without any deduction for the first. That said, we never answered the direct question posed earlier in the opinion, i.e., whether Nebraska is an apportionment state. Instead, we concluded that in states that have apportionment statutes, the scenario in *Jacob* would not produce apportionment anyway, and therefore, under the facts in *Jacob*, apportionment was not appropriate.

[6] We are now asked to determine whether apportionment is appropriate to successive injuries to different parts of the body when the former injury was a compensated injury to the body as a whole and the subsequent injury is a compensable injury to the body as a whole. The difficulty in determining whether apportionment should apply lies in the fact that Nebraska does not have an apportionment statute.

In summarizing the law governing apportionment, Professor Larson noted in assessing his own statement governing the law of apportionment, that "'[t]his is correct under the usual apportionment statute . . . .'" *Jacob*, 2 Neb. App. at 491, 511 N.W.2d at 221. But it is difficult to assign a definition to apportionment when the definition differs by state statute and Nebraska has no such statute. We note that Professor Larson's workers' compensation treatise indicates that "[i]n the absence of an apportionment statute, the general rule is that the employer becomes liable for the entire disability resulting from a compensable accident." 8 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 90.01 at 90-2 (2017). We further note that although Nebraska did formerly have an apportionment statute which provided for apportionment in connection with the Second Injury Fund, and that a Second Injury Fund is one of the "three principal forms" of apportionment discussed by Professor Larson, that statute applies only to "injuries occurring before December 1, 1997." Neb. Rev. Stat. § 48-128 (Reissue 2010). Finally, we note that in *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 473, 461 N.W.2d 565, 575 (1990), after reviewing the facts to determine whether apportionment should apply, the Nebraska Supreme Court stated, "allocation of disability attributable to a work-related injury and disability attributable to an antecedent or preexisting disability or condition which may or may not be work-related is irrelevant in this case inasmuch as there is no claim against the Second Injury Fund." We read the Supreme Court's statement in *Heiliger* to be a manifestation of the general rule as provided by Professor Larson. That is, absent a statute requiring apportionment, the doctrine of apportionment is not applicable.

Accordingly, we hold that because Nebraska does not have an apportionment statute, apportionment is not appropriate to the case at bar. We further note that applying Professor Larson's summarization of "'the usual apportionment statute,'" apportionment would not apply to these facts because, with an

injury to a different body part, the second injury and result-
ing disability would have existed regardless of whether the
prior injury occurred. As such, although on different grounds,
we affirm the Workers' Compensation Court's decision not to
apportion Picard's second injury award with the first.

### Failure to Assess Loss of Earning Power

Appellants next argue that the court erred in assessing
Picard's lost earning power from the second injury by simply
ignoring Picard's lost earning power and condition related to
the first injury—which continued to act as a source of disabil-
ity at the time of her second injury. We note that P&C Group
does not appeal the compensation court's determination of a
75-percent loss of earning capacity as a result of Picard's 2012
injury. We thus affirm the compensation court's order related
to the 2012 injury and loss of earning award. We proceed to
consider the impact, if any, of the continuing disability which
resulted in the 2012 loss of earning capacity award when
determining a loss of earning capacity resulting from Picard's
2015 injury.

Part of the difficulty in this case lies with the fact that the
2012 claim for the injury to Picard's hands was consolidated
and tried together with the 2015 claim for the injury to Picard's
back. In fact, Rhen was asked to perform her lost earning
capacity analysis in connection with the 2015 injury before
being asked by the court to perform a similar analysis for the
2012 injury. As a result, it appears that Rhen made her assess-
ment of lost earning capacity for 2015 without taking into
account any continuing disability from the 2012 injury. That
fact is reflected in the following colloquy:

> Q. Okay. So is it fair to say that the back injury did
> not change the loss of earning power, given that [Picard]
> remains in that same position that she held at the time that
> she was placed at maximum medical improvement for
> the wrist injuries and given that five-pound restriction?

[Picard's counsel:] Objection, calls for a legal conclusion.

A. I'm not sure how to answer that. I went ahead and — like I said, I received the information kind of in reverse order. The second one came before the first one. So when I completed the original report dated January 23rd, I was taking the information that I had in front of me at that time and providing an opinion based upon that.

Appellants properly note that after Picard's 2012 injuries to her hands and her bilateral carpal tunnel release surgeries, as well as prior to her 2015 back surgery, Picard was assigned a permanent restriction of not lifting over 5 pounds and was no longer allowed to work overtime for her employer. She was moved to a job that accommodated those medical restrictions. As a result, Rhen, the court-appointed vocational rehabilitation counselor, opined that Picard was unemployable outside of her present employment and suffered a 60-percent loss of earning power if she remained employed with P&C Group. Based upon this evidence, the Workers' Compensation Court assigned Picard a 75-percent loss of earning capacity related to the 2012 injuries and compensated Picard for her loss of earning power on that basis.

Appellants then note that Picard, while working with the job assignment and restrictions from her first accident, suffered her back injury in 2015. Following her back surgery, Picard was assigned a 10-pound lifting restriction along with restrictions for repetitive bending, squatting, and twisting. As a result, and without considering medical or functional data from the first accident, Rhen indicated that if Picard remained employed with P&C Group, she would have a 50- to 55-percent loss of earning power, but that if Picard did not remain so employed, her lost earning capacity was 100 percent. Picard's doctor even acknowledged that Picard did not need additional accommodation at work following her back injury, given that there were restrictions in place following

her hand injuries and that Picard worked regularly following her medical release.

Appellants argue that because Picard's lifting restriction from her 2012 injuries to her hands was greater than the lifting restrictions from the 2015 injury to her back, and because Picard did not need any additional accommodations at work for the second injury given the restrictions from the first, the evidence demonstrates there was no additional lost earning power from the second injury.

When determining how to properly calculate compensation for Picard's 2015 back injury, an injury to her body as a whole, our analysis begins with the controlling compensation statute, § 48-121 (Reissue 2010). Section 48-121(2) provides, in pertinent part:

> For disability partial in character, except the particular cases mentioned in subdivision (3) of this section, the compensation shall be sixty-six and two-thirds percent of the difference between *the wages received at the time of the injury and the earning power of the employee thereafter*, but such compensation shall not be more than the maximum weekly income benefit specified in section 48-121.01.

(Emphasis supplied.)

Here, the Workers' Compensation Court recognized that apportionment was not appropriate, but then appeared to assess Picard's lost earning power from the 2015 back injury as if the 2012 injury did not exist. By the time of the 2015 injury, Picard was making wages for her job subject to the limitations and restrictions from her first injury, for which the compensation court awarded her a 75-percent loss of earning capacity. Her restrictions and reduced earning capacity from her 2012 injury to her wrists continued to be in effect at the time of her 2015 injury to her back. Notably, the 2015 injury did not result in any additional lifting restrictions which were not already in place prior to the 2015 injury. In short, it appears that because the court correctly concluded that

apportionment was not applicable, it disregarded any disability from the first accident in assessing lost earnings from the second, resulting in the court's ordering an additional award for a 55-percent loss of earning capacity.

Although Appellants argue that Picard's earning power was not further reduced as a result of her 2015 back injury, due to her permanent lifting restrictions resulting from her 2012 injuries to her wrists, we are mindful of our court's prior statement in *Martinez-Najarro v. IBP, inc.*, 12 Neb. App. 504, 678 N.W.2d 114 (2004). In *Martinez-Najarro*, we separately decided the matter on the basis that the prior injury was not compensated and the prior injury was to a scheduled member; however, we noted in dicta, "Even if [the claimant] had not had a prior 34-pound lifting restriction from his shoulder injury, his hernia still would have resulted in a 30-pound lifting restriction. The two injuries were not related, so the second injury would not have been less had the first injury not occurred." 12 Neb. App. at 513, 678 N.W.2d at 123. Although our court made that statement in relation to explaining why injuries to separate body parts do not invoke the doctrine of apportionment, it equally applies to Appellants' argument here.

[7] As the Nebraska Supreme Court noted in *Risor v. Nebraska Boiler*, 274 Neb. 906, 912, 744 N.W.2d 693, 698 (2008), "The principal purpose of the [Nebraska Workers' Compensation] Act is to provide an injured worker with prompt relief from the adverse economic effects caused by a work-related injury or occupational disease." Section 48-121 provides that "[t]he following schedule of compensation is hereby established for injuries resulting in disability . . . ." If we were to find that Picard was not entitled to compensation because her earning power, diminished by the current injury, was not compensable due to malingering, similar restrictions from a different injury, Picard would be denied compensation for her current injury. We believe the better reasoned interpretation of § 48-121(2) requires that the court review Picard's lost earning

power from the current injury independent of any limitations
from a prior dissimilar compensable injury. As such, albeit
for a different reason, we affirm the Workers' Compensation
Court's finding that the 2015 injury and impact on Picard's
lost earning power should be assessed independently of any
limitations from Picard's 2012 injury.

ATTORNEY FEES AND PENALTIES

[8-10] Finally, we address Appellants' contention that the
court erred in awarding Picard attorney fees, penalties, and
interest relating to the 2015 injury. In making the award, the
court held there was no reasonable controversy governing
the substance of the 2015 award and that therefore, the attor-
ney fee, penalties, and interest provisions of § 48-125 were
applicable. As the Nebraska Supreme Court noted in *McBee
v. Goodyear Tire & Rubber Co.*, 255 Neb. 903, 908-09, 587
N.W.2d 687, 692 (1999):

> As construed by this court, Neb. Rev. Stat. § 48-125
> (Reissue 1993) authorizes a 50-percent penalty pay-
> ment for waiting time involving delinquent payment
> of compensation and an attorney fee, where there is
> no reasonable controversy regarding an employee's
> claim for workers' compensation. *Musil v. J.A. Baldwin
> Manuf. Co.*, 233 Neb. 901, 448 N.W.2d 591 (1989);
> *Mendoza v. Omaha Meat Processors*, 225 Neb. 771,
> 408 N.W.2d 280 (1987). Whether a reasonable con-
> troversy exists pertinent to § 48-125 is a question of
> fact. *Starks v. Cornhusker Packing Co., supra*; *U S
> West Communications v. Taborski, supra*. In *Mendoza v.
> Omaha Meat Processors, supra*, this court adopted guide-
> lines to aid courts in determining whether a reasonable
> controversy exists. A reasonable controversy may exist
> (1) if there is a question of law previously unanswered
> by the Supreme Court, which question must be answered
> to determine a right or liability for disposition of a
> claim under the Nebraska Workers' Compensation Act, or

(2) if the properly adduced evidence would support reasonable but opposite conclusions by the compensation court concerning an aspect of an employee's claim for workers' compensation, which conclusions affect allowance or rejection of an employee's claim, in whole or in part. *U S West Communications v. Taborski, supra*; *Kerkman v. Weidner Williams Roofing Co.*, 250 Neb. 70, 547 N.W.2d 152 (1996); *Mendoza v. Omaha Meat Processors, supra*. Under the *Mendoza* test, when there is some conflict in the medical testimony adduced at trial, reasonable but opposite conclusions could be reached by the compensation court. As such, this indicates the presence of a reasonable controversy. *Kerkman v. Weidner Williams Roofing Co., supra*. See, also, *Tlamka v. Goodyear Tire & Rubber Co.*, 225 Neb. 789, 408 N.W.2d 291 (1987) (no reasonable controversy existed when all medical testimony agreed that claimant's condition was probably caused by his industrial accident).

Because of the lack of clarity in our prior authority governing the applicability of apportionment and/or considerations in determining an award for successive compensated body as a whole injuries, we disagree that there was no reasonable controversy here. Accordingly, we reverse and vacate that portion of the award granting Picard attorney fees, penalties, and costs.

## CONCLUSION

In sum, we affirm the Workers' Compensation Court's awards for Picard's 2012 and 2015 injuries. However, we reverse and vacate the court's award of attorney fees, penalties, and interest provisions relating to the 2015 award.

AFFIRMED IN PART, AND IN PART
REVERSED AND VACATED.